827 F.2d 380
 56 USLW 2147
 UNITED STATES of America, Appellee,
v.
RED LAKE BAND OF CHIPPEWA INDIANS; Red Lake Tribal Council;
Roger Jourdain; Royce Graves; James Strong; Allen
English; Lawrence Bedeau; George Jones; Adolph Barrett;
Roman Stately, Jr.; Gerald Brun; Dan Raincloud, Jr.; Tom
Stillday, Appellants.
 No. 86-5453.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 11, 1987.
Decided Aug. 31, 1987.
Rehearing Denied Sept. 28, 1987.
 
 James F. Bodin, Duluth, Minn., for appellants.
 Laura Heiser, Washington, D.C., for appellee.
 Before McMILLIAN, Circuit Judge, FAIRCHILD,* Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.
 McMILLIAN, Circuit Judge.
 
 
 1
 The Red Lake Band of Chippewa Indians, the Red Lake Tribal Council and Red Lake Band officials (collectively Red Lake) appeal from a final judgment entered in the District Court[1] for the District of Minnesota granting custody to the United States of certain records of the Red Lake Court of Indian Offenses (the tribal court). For reversal, Red Lake contends (1) tribal sovereign immunity bars the district court's assertion of jurisdiction over this action, and (2) the district court erred in granting summary judgment because there existed a genuine issue of material fact about whether the tribal court records were agency records belonging to the United States. For the reasons discussed below, we affirm the judgment of the district court.
 
 
 2
 In August 1985, Red Lake removed case records from its tribal court and stored them in the tribal archives. The Bureau of Indian Affairs (BIA) demanded that Red Lake return the records and Red Lake refused. The United States then filed this action under the Federal Records Act, 44 U.S.C. Sec. 3106,[2] seeking recovery of the records. The United States claimed that the tribal court records were agency records belonging to the BIA and the Department of Interior and that the removal of these records violated the Federal Records Act. The United States moved for summary judgment and Red Lake responded that tribal sovereign immunity barred the suit. Red Lake argued in the alternative and on the merits that its tribal court records are not agency records belonging to the United States, i.e., that the Red Lake tribal court is an independent tribal court and is not organized under or subject to BIA regulations.
 
 
 3
 The district court granted summary judgment for the United States. United States v. Red Lake Band of Chippewa Indians, Civ. No. 6-86-34 (D.Minn. Oct. 31, 1986) (memorandum opinion). The district court held first that it had jurisdiction over the case because sovereign immunity may not be asserted by an Indian tribe against the United States. Id. at 5. The district court relied on Washington v. Confederated Tribes of Colville, 447 U.S. 134, 153-54, 100 S.Ct. 2069, 2081, 65 L.Ed.2d 10 (1980) (Colville ), where the Supreme Court held that "tribal sovereignty is dependent on, and subordinate to, ... the Federal Government," and that "tribes retain ... their historical sovereignty not inconsistent with the overriding interests of the National Government."
 
 
 4
 Red Lake acknowledges on appeal that tribal sovereign immunity is not absolute as against the federal government. Red Lake contends, however, that the Supreme Court has held that only Congress may override tribal sovereign immunity and only by express waiver, citing Santa Clara Pueblo v. Martinez, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978) (Santa Clara Pueblo ). There, the Court stated: "[T]ribal sovereign immunity ... is subject to the superior and plenary control of Congress. But without congressional authorization, the Indian Nations are exempt from suit. It is well settled that a waiver of sovereign immunity cannot be implied but must be unequivocally expressed." Id. at 58 (citations omitted). Red Lake argues that the district court's jurisdictional ruling in this case contradicts Santa Clara Pueblo and means that any federal agency may waive tribal sovereign immunity merely by suing the tribe, whether or not Congress has waived the tribe's sovereign immunity. Congress has not expressly waived tribal sovereign immunity under the Federal Records Act.
 
 
 5
 Whether tribal sovereign immunity may bar an action by the United States against an Indian tribe is a question of first impression in this circuit. In United States v. White Mountain Apache Tribe, 784 F.2d 917, 920 (9th Cir.1986), the Ninth Circuit held that "the Tribe's own sovereignty does not extend to preventing the federal government from exercising its superior sovereign powers." This principle was later cited by the same court in United States v. Yakima Tribal Court, 806 F.2d 853, 861 (9th Cir.1986) (Yakima ), cert. denied, --- U.S. ----, 107 S.Ct. 2461, 95 L.Ed.2d 870 (1987), in support of its holding that the United States could sue and override a tribe's sovereign immunity just as it could sue and override a state's sovereign immunity, citing United States v. Mississippi, 380 U.S. 128, 140-41, 85 S.Ct. 808, 814-15, 13 L.Ed.2d 717 (1965) (Mississippi ) (federal sovereignty overrides state sovereignty).
 
 
 6
 Red Lake seeks to distinguish the Yakima and White Mountain cases. In both cases, the tribe obtained an injunction in tribal court preventing federal officials from carrying out official duties on the reservation. The United States challenged the injunctions in federal district court and the tribe resisted, arguing the district court had no jurisdiction. Because the tribes initiated the proceedings in tribal court, Red Lake argues that the tribes had waived their sovereign immunity with respect to the orders and decisions of the tribal court, which orders and decisions were in turn the subject of the litigation in federal district court. Red Lake also argues that the analogy drawn in Yakima between the relationship of the federal government and Indian tribes and that between the federal government and the individual states is not apt because Indian tribes exist in a trust relationship with the federal government and the states do not. See F. Cohen, Handbook of Federal Indian Law 220-21 (1982 ed.). Red Lake asserts it would not be a proper exercise of the federal government's fiduciary duty to permit an implicit waiver of tribal sovereign immunity whenever a federal agency wanted to sue an Indian tribe.
 
 
 7
 We conclude it is an inherent implication of the superior power exercised by the United States over the Indian tribes that a tribe may not interpose its sovereign immunity against the United States. In general, Indian tribes possess the common-law immunity from suit traditionally enjoyed by sovereign powers. Turner v. United States, 248 U.S. 354, 358, 39 S.Ct. 109, 110, 63 L.Ed. 291 (1919). The status of Indian tribes in relation to the United States, however, is paradoxical. "[T]he relation of the Indians to the United States is marked by peculiar and cardinal distinctions which exist nowhere else." Cherokee Nation v. Georgia, 30 U.S. (5 Pet.) 1, 15, 8 L.Ed. 25 (1831). The tribes have been described as "domestic dependent nations," id. at 17, exercising many of the sovereign powers of an independent nation, yet existing in a ward-guardian relationship with the federal government and thus subject to its superior and plenary powers. In sum, the Indian tribes are distinct, independent political communities, retaining the right of self-government, yet subject to the protecting power of the United States. See Worcester v. Georgia, 31 U.S. (6 Pet.) 515, 8 L.Ed. 483 (1832).
 
 
 8
 This status has been interpreted to mean that Indian tribes retain all fundamental attributes of sovereignty unless divested of them by federal law or by the "necessary implication of their dependent status." Colville, 447 U.S. at 152, 100 S.Ct. at 2081 (citation omitted).[3] Tribal immunity from suit without their consent is among those fundamental attributes of sovereignty that may be divested as an implicit result of their dependent status. Cf. United States v. United States Fidelity & Guaranty Co., 309 U.S. 506, 512, 60 S.Ct. 653, 656, 84 L.Ed. 894 (1940) ("[I]t is as though the immunity which was theirs as sovereigns passed to the United States for their benefit, as their tribal properties did."). We conclude that just as a state may not assert sovereign immunity as against the federal government, Mississippi, 380 U.S. at 140-41, 85 S.Ct. at 814-15, neither may an Indian tribe, as a dependent nation, do so. Tribal sovereign immunity may not be asserted against the United States and we hold therefore that the district court had jurisdiction over this case.
 
 
 9
 Red Lake next contends the district court erred in ruling that the tribal court records are agency records and thus the property of the United States. The question of ownership of the tribal court records depends on the status of the Red Lake Court of Indian Offenses. The United States argues that the tribal court is a "C.F.R. court" organized under the BIA and governed by 25 C.F.R. Pt. 11. Part 11 establishes "Courts of Indian Offenses" on designated reservations for the purpose of providing "adequate machinery of law enforcement for those Indian tribes in which traditional agencies for the enforcement of tribal law and custom have broken down for which no adequate substitute has been provided under Federal or State law." 25 C.F.R. Sec. 11.1(b). The Red Lake Reservation is among those reservations specifically designated in the regulation. Id. Sec. 11.1(a)(6). The records of C.F.R. courts are agency records and belong to the United States. See 44 U.S.C. Sec. 3301 (federal records are "all books, papers ... or other documentary materials ... made or received by an agency of the United States Government under Federal law or in connection with the transaction of public business and preserved as appropriate for preservation by that agency"); 25 C.F.R. Sec. 11.11 (C.F.R. courts must keep records of all court proceedings and these records are to be kept at a BIA office).
 
 
 10
 Red Lake contends that because its tribal court is an independent tribal court and therefore not subject to the recordkeeping provisions of 25 C.F.R. Sec. 11.1, its tribal court records are not agency records belonging to the United States. Designated tribal courts are presumptively C.F.R. courts. A C.F.R. court may, however, exempt itself from BIA regulation and be reclassified as an independent tribal court if the tribe establishes that it was organized under the Indian Reorganization Act of 1934 (IRA), 25 U.S.C. Secs. 461-479, and that it has adopted its own law and order code in accordance with its constitution and bylaws. 25 C.F.R. Sec. 11.1(d).
 
 
 11
 The district court entered summary judgment in this case because Red Lake failed to offer any evidence that the tribe had met the requirements of Sec. 11.1(d). Memorandum opinion at 10, 13. Red Lake contends on appeal that the district court should not have ordered summary judgment, but should instead have permitted further discovery on these issues.
 
 
 12
 Red Lake did not offer evidence establishing the necessary elements for exemption under Sec. 11.1(d) at the summary judgment stage. Red Lake merely stated then, as it does now, that it does not know whether the tribe is organized under the IRA or whether the tribe has adopted a law and order code that effectively supplants agency regulation. Red Lake thus failed to produce any evidence that would lead the district court to conclude that there existed any genuine factual dispute about whether the tribal court was still a C.F.R. court, as the Red Lake tribal court is specifically designated in the Part 11 regulations. The structure of the regulations requires Red Lake to affirmatively establish that it has met the exemption requirements of Sec. 11.1(d). Absent evidence that the exemption applies, the Part 11 regulations would indicate that the United States was entitled to judgment as a matter of law. Red Lake's unsupported assertions that additional discovery is necessary on these issues are not sufficient to create a factual issue that would make summary judgment inappropriate in this case. See Fed.R.Civ.P. 56(e) (party resisting motion for summary judgment may not rest on mere allegations or denials, but must set forth in his or her response specific facts showing that there is a genuine issue for trial). We hold the district court did not err in entering summary judgment in this case.
 
 
 13
 Accordingly, the judgment of the district court is affirmed.
 
 
 
 *
 The Honorable Thomas E. Fairchild, Senior Circuit Judge for the United States Court of Appeals for the Seventh Circuit, sitting by designation
 
 
 [1]
 The Honorable Harry H. MacLaughlin, United States District Judge for the District of Minnesota
 
 
 [2]
 44 U.S.C. Sec. 3106 provides:
 Unlawful removal, destruction of records. The head of each Federal agency shall notify the [Federal Records] Archivist of any actual, impending, or threatened unlawful removal, defacing, alteration, or destruction of records in the custody of the agency of which he [or she] is the head that shall come to his [or her] attention, and with the assistance of the Archivist shall initiate action through the Attorney General for the recovery of records he [or she] knows or has reason to believe have been unlawfully removed from his [or her] agency, or from another Federal agency whose records have been transferred to his [or her] legal custody. In any case in which the head of the agency does not initiate an action for such recovery or other redress within a reasonable period of time after being notified of any such unlawful action, the Archivist shall request the Attorney General to initiate such an action, and shall notify the Congress when such a request has been made.
 
 
 [3]
 The Supreme Court has found such a divestiture in cases where
 the exercise of tribal sovereignty would be inconsistent with the overriding interests of the National Government, as when the tribes seek to engage in foreign relations, alienate their lands to non-Indians without federal consent or prosecute non-Indians in tribal courts which do not accord the full protections of the Bill of Rights.
 Washington v. Confederated Tribes of Colville, 447 U.S. 134, 153-54, 100 S.Ct. 2069, 2081, 65 L.Ed.2d 10 (citations omitted).