**UNITED STATES of America,
Plaintiff,**

v.

**STORY COUNTY, IOWA, by and through its Board of Supervisors, Defendant.**

**No. 4:13–cv–00360–JEG.**

United States District Court,
S.D. Iowa,
Central Division.

Signed July 3, 2014.

William C. Purdy, U.S. Attorney's Office, Des Moines, IA, Marcia Kay Sowles, John Russell Tyler, U.S. Dept. of Justice–Civil Division, Washington, DC, for Plaintiff.

Stephen Harris Holmes, Story County Attorney, Nevada, IA, for Defendant.

## ORDER

JAMES E. GRITZNER, Chief Judge.

Before the Court is a Motion to Dismiss brought by Defendant Story County, Iowa (Story County) and a Motion for Summary Judgment brought by Plaintiff United States of America (the United States). Both Motions are resisted. The Court held a hearing on the Motions on March 5, 2014. Department of Justice Attorney Marcia Sowles, Department of Commerce Attorney Russell Craig, and Assistant U.S. Attorney William Purdy were present for the United States. Story County Attorney Stephen Holmes was present for Story County. The Motions are ready for disposition. The following facts are not in material dispute.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The First Responders Network Authority (FirstNet) is an independent authority within the National Telecommunications Information Administration (NTIA), an agency of the United States Department of

Commerce. *See* 47 U.S.C. § 1424(a). The Middle Class Job Creation and Tax Relief Act of 2012 (the Act), 47 U.S.C. § 1401 et seq., authorized and appropriated $7 billion available through fiscal year 2022 to FirstNet to build, deploy and operate the nationwide public safety broadband network. *Id.* § 1457(b)(3). The Act established the Public Safety Trust Fund (the Fund), into which were directed the auction proceeds from certain spectrum auctions conducted by the Federal Communications Commission (FCC) that were then made available for a variety of programs, including the $7 billion for FirstNet. *Id.* § 309(j)(8). Until such time as spectrum auction proceeds are deposited into the Fund, however, NTIA was authorized to borrow up to $2 billion from the Treasury to fund FirstNet's initial activities. *Id.* § 1427(a).

Among the objectives of FirstNet is to "ensure the building, deployment, and operation of the nationwide public safety broadband network," to "ensure the safety, security, and resiliency of the network, including requirements for protecting and monitoring the network to protect against cyberattack," and to "address special considerations for areas or regions with unique homeland security or national security needs." *Id.* § 1426(b)(1)-(2). The FirstNet Board is comprised of the Secretary of Homeland Security, the U.S. Attorney General, the Director of the Office of Management and Budget, and twelve individuals appointed by the Secretary of Commerce.

On August 20, 2012, Story County Sheriff Paul Fitzgerald (Sheriff Fitzgerald) was appointed to the FirstNet Board by the then Acting Secretary of Commerce. At the time of his appointment to FirstNet, Sheriff Fitzgerald was the Democratic candidate for re-election as Story County Sheriff and was re-elected in November 2012. When performing his FirstNet duties and activities, Sheriff Fitzgerald receives pay from the United States for his time spent in performing his duties on behalf of FirstNet and compensation for associated travel expenses.[1]

In his capacity as a FirstNet Board member, Sheriff Fitzgerald communicates (including by email) with other FirstNet Board members as well as FirstNet officials and employees regarding FirstNet activities and plans. These communications include discussion of proposed budgets, draft Board resolutions and minutes, prospective procurement plans, legal advice, other internal and additional communications.[2] Until June 2013, Sheriff Fitzgerald received and sent some communications in his capacity as a FirstNet Board member from his Story County email account, PFitzgerald@storycounty. com.

On July 29, 2013, a request was made to Story County by Mr. Tony Romm (Romm), a reporter for the political news publication *Politico*, for "all emails sent and received by Sheriff Paul Fitzgerald over the period between March 1 and June 30." Romm Email of July 29, 2013, Ex. 1 to Defs.' Mot. Dismiss, ECF No. 7–2. On August 1, 2013, Romm amended his re-

---

**1.** Story County acknowledges in Sheriff Fitzgerald's declaration that he is compensated "as a federal employee for [his] expenses, travel and time to serve on the FirstNet Board," Fitzgerald's Decl. ¶ 3, Gov't Mot. TRO, ECF No. 2–2, but denies knowledge of the specifics regarding payments made to Sheriff Fitzgerald by the United States.

**2.** Story County qualifies that the responsive emails also contain communications with persons who are not FirstNet Board members. However, the United States' statement identifies not only Board members but FirstNet officials and employees.

quest to include "emails the sheriff sent and received between March 1 and June 30 on any matters surrounding his involvement with FirstNet, his conversations with wireless companies or device makers, or on the topic of wireless communications generally." Romm Email of Aug. 1, 2013, Ex. 2 to Defs.' Mot. Dismiss, ECF No. 7–2.

Sheriff Fitzgerald became aware of this request, informed Kathy Smith, Chief Counsel of NTIA (Smith), and forwarded to her a copy of Romm's modified request. Upon being informed of Romm's request, Smith contacted Iowa Deputy Attorney General Julie Pottorff (Pottorff) and explained Sheriff Fitzgerald's position as a FirstNet Board member and the federal interest in communications by Sheriff Fitzgerald as a member of that Board. On August 8, 2013, Pottorff contacted Assistant Story County Attorney Jessica Reynolds (Reynolds) and, confirming an earlier discussion, stated that Sheriff Fitzgerald's email communications as a member of the FirstNet Board were federal records "and access should be determined under federal law." Pottorff Email of Aug. 8, 2013, Gov't Mot. TRO, ECF No. 2–4. Pottorff further

advised Reynolds that it was also the view of the Department of Commerce that these were federal records. Pottorff requested that Reynolds turn the documents over to Smith to "shift the emails to the federal attorneys and allow them to process Romm's request under federal law." *Id.*

On August 12, 2013, Pottorff reiterated to Reynolds that federal counsel was willing "to work on the disclosure issues at the federal level" and that she thought it was "extremely unlikely that the county would be held in violation of its disclosure obligation by transferring these issues at the request of the Attorney General's office to the Department of Commerce where Sheriff Fitzgerald's appointment originates" and hoped that "the county appreciates it is in everyone's interest to have the disclosure of emails related to the federal position determined at the federal level." Pottorff Email of Aug. 12, 2013, Gov't Mot. TRO, ECF No. 2–4. The United States did not offer to indemnify Story County if Story County was sued[3] and found liable for a violation of Iowa's Open Records Act, Iowa Code ch. 22.[4]

---

**3.** As an additional material fact, Story County asserts that the Iowa Attorney General never offered to indemnify Story County.

**4.** Iowa Code § 22.2 states as follows:

1. Every person shall have the right to examine and copy a public record and to publish or otherwise disseminate a public record or the information contained in a public record. Unless otherwise provided for by law, the right to examine a public record shall include the right to examine a public record without charge while the public record is in the physical possession of the custodian of the public record. The right to copy a public record shall include the right to make photographs or photographic copies while the public record is in the possession of the custodian of the public record. All rights under this section are in addition to the right to obtain a certified copy of a public record under section 622.46.

2. A government body shall not prevent the examination or copying of a public record by contracting with a nongovernment body to perform any of its duties or functions.

3. However, notwithstanding subsections 1 and 2, a government body is not required to permit access to or use of the following:

a. A geographic computer database by any person except upon terms and conditions acceptable to the governing body. The governing body shall establish reasonable rates and procedures for the retrieval of specified records, which are not confidential records, stored in the database upon the request of any person.

b. Data processing software developed by the government body, as provided in section 22.3A.

Iowa Code § 22.1(3) defines public records as "all records, documents, tape or other information, stored or preserved in any medi-

On August 13, 2013, NTIA Deputy Chief Counsel Milton Brown (Brown) contacted Reynolds requesting an opportunity to discuss the matter. In response, Reynolds emailed Brown and Pottorff advising, "Today the Story County Board of Supervisors voted to release the requested records to *Politico* at 9:00 a.m. on Monday, August 19, 2013." Reynolds Email of Aug. 13, 2013, Gov't Mot. TRO, ECF No. 2–4. Brown then requested copies of the subject emails from Reynolds, to which Reynolds responded on August 14th, "We will be happy to provide copies to you on Monday at 9:00 a.m. when we release the documents to *Politico* but not sooner." Brown Email of Aug. 13, 2013, Gov't Mot. TRO, ECF No. 2–4.

On August 16, 2013, the U.S. Department of Justice, by Acting Associate Attorney General Elizabeth G. Taylor (Taylor), wrote to Story County Attorney Stephen H. Holmes (Holmes) regarding Story County's decision to disclose the email communications. Taylor stated that "Sheriff Fitzgerald was at all times acting as a special federal employee and a member of the FirstNet Board" and, consequently, that "Sheriff Fitzgerald's emails are the property of the federal government notwithstanding the fact that Sheriff Fitzgerald used the Story County email domain when engaging in these communications." Taylor letter of Aug. 16, 2013, Compl.-Ex. 1, ECF No. 1–1. Taylor, therefore, respectfully requested that the County Board of Supervisors reconsider their decision to release the records. *Id.*

On August 20, 2013, the United States filed this declaratory judgment action asking for injunctive relief against Story County, by and through its Board of Supervisors, and requesting an order declaring that the FirstNet records are the property of the United States expressly exempted from the disclosure requirements of the Freedom of Information Act' ("FOIA"), 5 U.S.C. § 552, *see* 47 U.S.C. § 1426(d)(2),[5] and enjoining Story County from publicly releasing those records. Along with the Complaint, the United States filed a Motion for Temporary and Preliminary Injunctive Relief. Based upon an agreement of the parties, the Court entered a Temporary Restraining Order on August 20, 2013, enjoining Defendant for a period of fourteen days from publicly releasing records in its possession that were sent or received by Sheriff Fitzgerald in his federal official capacity as a member of the FirstNet Board of Directors. On August 30, 2013, the parties entered a Stipulation for Preliminary Injunction, enjoining Story County, directly or indirectly, from publicly releasing any records in its possession that were sent to or received by Sheriff Fitzgerald in his federal official capacity as a member of the FirstNet Board of Directors pending a hearing and decision on the merits of this action or until further order of the Court. Pursuant to the stipulation, the Court entered a preliminary injunction on September 3, 2013, ECF No. 6.[6]

On September 30, 2013, Story County filed a Motion to Dismiss. On November 15, 2013, the United States filed a Motion

---

um, *of or belonging to this state or any county, city, township . . . .*" (emphasis added).

**5.** Section 1426(d)(2) provides, "Exemption from certain laws—Any action taken or decisions made by the First Responder Network Authority shall be exempt from the requirements of . . . chapter 5 of Title 5 (commonly

referred to as the Administrative Procedures Act) . . . ." FOIA, which is codified at 5 U.S.C. § 552, falls within this exemption.

**6.** The case was stayed from October 4, 2013, until October 21, 2013, due to the lapse in federal government appropriation. *See* Text Order of Oct. 4, 2013, ECF No. 8.

for Summary Judgment and Resistance to Story County's Motion to Dismiss. On December 12, 2013, the Court held a telephonic status conference and entered a briefing schedule for the pending motions. At the March 5, 2014, hearing, Story County conceded that under the circumstances, its motion to dismiss has been converted into a cross-motion for summary judgment, which the Court will treat accordingly.

## II. DISCUSSION

Story County argues the records at issue that are responsive to *Politico*'s Iowa Code ch. 22 request, belong to Story County, and do not meet the definition of a federal record. Story County further argues the United States has waived any ability to restrict the release of the records pursuant to § 1426(d)(2), which is overboard and unconstitutional as applied. Story County's final argument is that the United States violates state sovereignty by attempting to reach into Story County's email system and to prohibit disclosure of Story County email records that are subject to the Iowa Open Records Act.

The United States counters that it is entitled to summary judgment because the records made and received by Sheriff Fitzgerald in his capacity as a FirstNet Board member are federal records, not Story County records, and therefore they are not subject to Iowa's Open Records Act; the United States has not waived its ability to prevent Story County from disclosing the records created or received by Sheriff Fitzgerald in his capacity as a FirstNet Board Member; section 1462(d)(2) does not violate the First Amendment; and the action by the United States to prevent Story County from releasing federal records does not violate the Tenth Amendment.

### A. Summary Judgment Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The moving party bears the initial burden of establishing that there are no genuine issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265· (1986). The movant must support its contention by pointing to "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" to demonstrate no genuine issue of material fact. Fed.R.Civ.P. 56(c)(1)(A). The Court "must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party." *Weitz Co., LLC v. Lloyd's of London,* 574 F.3d 885, 892 (8th Cir.2009) (quoting *Carraher v. Target Corp.,* 503 F.3d 714, 716 (8th Cir.2007)).

To defeat summary judgment, the nonmovant must respond by "produc[ing] sufficient evidence to support a verdict in his favor based on more than speculation, conjecture, or fantasy." *Doe v. Dep't of Veterans Affairs,* 519 F.3d 456, 460 (8th Cir. 2008) (citation and internal quotation marks omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will ˙be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248, 106 S.Ct. 2505. "[W]here the record

taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation and internal quotation marks omitted).

### B. Sheriff Fitzgerald's Federal Employee Status

Story County contends that as the 2012 Democratic candidate running for re-election, Sheriff Fitzgerald was at all times "running" for partisan political office, and therefore, if Sheriff Fitzgerald was a federal employee in August of 2012, he would have been prohibited under the Hatch Act, 5 U.S.C. §§ 7321–7326, from running for Story County Sheriff in November of 2012. Story County surmises, therefore, either the United States did not perceive Sheriff Fitzgerald to be a federal employee at the time he was running for reelection or it did consider him to be a federal employee and thereby allowed a violation of the Hatch Act. Story County concludes that because "[t]he Hatch Act has no authority to remove the Sheriff from his ... county office in Iowa," it must mean that "he cannot be a federal employee," and therefore "the government cannot make a legitimate claim for a property interest in the Sheriff's county emails." Def.'s Resist. Summ. J. 8, ECF No. 24–1.

The Hatch Act, in pertinent part, provides that a federal employee may not "run for the nomination or as a candidate for election to a partisan political office...." § 7323(a)(3). Sheriff Fitzgerald is identified as a "Special Government Employee" in his letter of appointment. Sheriff Fitzgerald's Ltr. of Appt., Gov't Mot. TRO, ECF No. 2–2 (announcing Sheriff Fitzgerald's appointment as an inaugural director of FirstNet and noting that he would "be considered a Special Government Employee tasked with meeting the requirements of FirstNet contained in Subtitle VI of the Middle Class Tax Relief and Job Creation Act of 2012"). Title 5 C.F.R. 734.601 defines that "[a]n employee who works on an irregular or occasional basis or is a special Government employee as defined in 18 U.S.C. § 202(a) is subject to the provisions of the applicable subpart of this part when he or she is on duty" and provides as an example that "[a]n employee appointed to a special commission or task force who does not have a regular tour of duty may run as a partisan political candidate, but may actively campaign only when he or she is not on duty." *But cf. Kane v. Merit Sys. Prot. Bd.,* 210 F.3d 1379, 1382 (Fed.Cir.2000) (upholding the decision of the Merit Systems Protection Board finding the plaintiff, a part-time mail carrier regularly scheduled to work every Saturday, did not qualify as an irregular or occasional employee of the U.S. Postal Service under § 202(a) because he had a regular tour of duty, and therefore running for reelection as the town tax assessor violated the Hatch Act).

It is the Office of Special Counsel ("OSC") that is authorized to investigate alleged violations of the Hatch Act, *see* 5 U.S.C. § 1216(a)(2); and if the OSC charges an employee with a violation, those charges are adjudicated before the Merit System Protection Board (MSPB), id. § 1215. While a violation of Hatch Act could possibly result in removal from office, *see* 5 U.S.C. § 7326, *Briggs v. Merit Sys. Prot. Bd.,* 322 Fed.Appx. 983, 984 (Fed.Cir.2009) (unpublished per curiam) (affirming the decision of the MSPB finding the plaintiff violated the Hatch Act by running for the partisan office of township supervisor while employed by an Executive agency—the Mine and Health Safety Administration (MHSA)—and removing plaintiff from his position); *Eisinger v.*

*Merit Sys. Prot. Bd.,* 236 Fed.Appx. 628, 629 (Fed.Cir.2007) (unpublished per curiam) (affirming the determination of the MSPB that plaintiff had violated the Hatch Act by engaging in partisan political activity while at work in his position as a staff attorney for the U.S. Small Business Administration and that removal from position was the appropriate penalty), adjudication and censure for any actual or perceived violation of the Hatch Act by Sheriff Fitzgerald are collateral issues that have been injected into this case by Story County and are not before this Court, *see, e.g.,* 116 Fed. Proc., L.Ed. § 40:73 ("Merit Systems Protection Board has exclusive authority to determine whether there has been a violation of the Hatch Act by a federal employee." (citing 5 C.F.R. § 734.102(b))). Furthermore, nothing in the Hatch Act's statutory scheme suggests that the duties undertaken by employees found in violation of the Act during their time of federal service are *ipso facto* rendered void or are somehow deprived of their federal purpose or character. Thus, assuming without deciding that Sheriff Fitzgerald's appointment to the FirstNet Board violated the Hatch Act or that his appointment to the First-Net Board was otherwise *void ab initio,* Story County cites to no authority, nor has the Court found any, for the proposition that the records at issue in this case would thus be stripped of their federal character and purpose.

The legitimacy of Sheriff Fitzgerald's appointment to FirstNet Board notwithstanding, the Supreme Court has instructed, "[t]he *de facto* officer doctrine confers validity upon acts performed by a person acting under the color of official title even though it is later discovered that the legality of that person's appointment or election to office is deficient." *Ryder v. United States,* 515 U.S. 177, 180, 115 S.Ct. 2031, 132 L.Ed.2d 136 (1995) ("The de facto

doctrine springs from the fear of the chaos that would result from multiple and repetitious suits challenging every action taken by every official whose claim to office could be open to question, and seeks to protect the public by insuring the orderly functioning of the government despite technical defects in title to office." (citation and internal quotation marks omitted)). There is no question that the public interest, as specifically contemplated by Congress when it created FirstNet, would be harmed if this Court were to strip the subject emails of their characterization as federal records even if there had been a Hatch Act violation due to Sheriff Fitzgerald's appointment to the FirstNet Board. Congress exempted FirstNet from operation of the federal Freedom of Information Act specifically to protect the confidentiality of records such as those at issue in this litigation. *See* 47 U.S.C. § 1426(d). Clearly, this purpose would be frustrated and the public interest thereby harmed were the Court to reach the result asked for by Story County. Story County's Hatch Act violation argument fails.

## C. Characterization of Sheriff Fitzgerald's Emails

Story County next argues the subject emails are documents produced by or originating from the United States and fit the definition of a public record under Iowa's Open Records Act, Iowa Code ch. 22. Story County points out that the United States' transmissions of records via Story County's email system were without Story County's knowledge or permission, were not transmitted by accident, mistake, or inadvertent transmission, rather that the transmissions of records involved the intentional use of the email address "PFitzgerald@storycounty.com" by Sheriff Fitzgerald, a partisan, elected Story County official. Story County notes that the

email address on its face indicates to members of the FirstNet Board that the information contained in the transmission is going to, or coming from, Story County, Iowa; and, therefore, if the United States sought to carve out authority over local county computer systems, the State of Iowa and Story County should have had notice and an opportunity to respond in adherence to the principles of federalism. Story County further argues it never received a request from FirstNet or any federal governmental agency to preserve any of the responsive emails from Sheriff Fitzgerald's Story County email account nor did it receive notice that the United States claimed a property interest in any of Sheriff Fitzgerald's emails, and it would not be reasonable for Story County to assume that Sheriff Fitzgerald was corresponding on county email as a federal employee since Sheriff Fitzgerald's federal employment status is prohibited by the Hatch Act. Story County concludes that the United States cannot meet the "appropriate for preservation" aspect of the definition of a federal record, 44 U.S.C. § 3301. For several reasons, the Court disagrees.

Title 44 U.S.C. § 3301 states,

As used in this chapter, "records" includes all books, papers, maps, photographs, machine readable materials, or other documentary materials, regardless of physical form or characteristics, made or received by an agency of the United States Government under Federal law or in connection with the transaction of public business and preserved or appropriate for preservation by that agency or its legitimate successor as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the Government or because of the informational value of data in them. Library and museum material made or acquired and preserved solely for reference or exhibition purposes, extra copies of documents preserved only for convenience of reference, and stocks of publications and of processed documents are not included.

■ The physical location of a record is not determinative as to whether it is a federal agency record. *See United States v. Red Lake Band of Chippewa Indians,* 827 F.2d 380, 383 (8th Cir.1987) (holding that the records of tribal courts established under federal regulations "are agency records and belong to the United States" despite having been in the possession of the tribal government).[7]

---

7. While acknowledging that the content of the subject emails is primary in making this determination, Story County argues *Red Lake* is distinguishable because it did not involve state sovereignty and federalism issues. Story County reads *Red Lake* too narrowly.

At issue in *Red Lake* were tribal records that the Red Lake Band of Chippewa Indians, the Red Lake Tribal Council, and the Red Lake Band officials (collectively, Red Lake) removed from tribal courts and stored in the tribal archives. *Red Lake,* 827 F.2d at 381. When Red Lake refused the demand of the Bureau of Indian Affairs (BIA) to return the records, the United States filed suit against Red Lake in federal district court arguing the tribal records were agency records belonging to the BIA and the Department of the Interior, and that removal of those records violated the Federal Records Act, 44 U.S.C. § 3106. *Id.* The district court granted the United States' motion for summary judgment rejecting Red Lake's arguments that tribal sovereign immunity barred the lawsuit and that the tribal records were not agency records under § 3106. *Id.* at 382.

Affirming on appeal, the Eighth Circuit first addressed the sovereign immunity issue, concluding "that just as a state may not assert sovereign immunity as against the federal government, neither may an Indian tribe, as a dependent nation, do so." *Id.* at 383 (citation omitted). Addressing Red Lake's argument that the tribal records were not federal rec-

The Iowa Supreme Court similarly found that the location of records was not determinative of the nature of those records in *City of Dubuque v. Dubuque Racing Association Ltd.*, 420 N.W.2d 450 (Iowa 1988). At issue in *Dubuque Racing* was whether minutes of a board meeting of the Dubuque Racing Association (DRA), a private, non-profit corporation, were public records belonging to the city due to the fact that two DRA board members were elected city officials, one of whom was the assistant city manager and stored his copies of the DRA board meeting minutes in the city manager's office. *Id.* at 452–53. The court first defined that

> a public record is a record or document *of or belonging* to the state or local government. A document *of* the government is a document that was produced by or originated from the government. Documents *belonging* to the government would include those documents that originate from other sources but are held by public officers in their official capacity.

*Id.* at 452. In determining the DRA board meeting minutes did not belong to the city and were exempt from inspection under Iowa Code § 22.7(18), the court reasoned that the inquiry did not turn on the physical location or the property rights of the documents, but turned on whether the documents were held by the assistant city manager in his capacity as a board member or in his capacity as assistant city manager. *Id.* at 453. The court concluded that "[s]imply because members of a city council serve on the board of directors of a private nonprofit corporation, the affairs of the corporation do not become the affairs of the government" and "[a]lthough members of the city council and the city manager may also serve as directors and committee members of the DRA, minutes of the DRA meetings are not documents that belong to the city." *Id.* at 454.

Story County argues *Dubuque Racing* is distinguishable because that case involved partisan city officials' mandatory participation on the defendant's private, non-profit corporation's board of directors; whereas, here, the United States is not a private, non-profit corporation. Story County attempts to further distinguish that here, the United States utilized Sheriff Fitzgerald in his official capacity as Story County Sheriff on the FirstNet Board, and that Sheriff Fitzgerald would not have had access to the email account where the subject emails were located without his status as Story County Sheriff.

■ It is a distinction without a difference that in this case the records at issue were stored in electronic format as opposed to having been stored in hard copy format as were the records at issue in *Dubuque Racing. See, e.g., Media Research Ctr. v. U.S. Dep't of J.*, 818 F.Supp.2d 131, 140 (D.D.C.2011) (determining that emails to and from the Solici-

ords, the court reasoned that "[t]he question of ownership of the tribal court records depends on the status of the Red Lake Court of Indian Offenses." *Id.* The court held that the tribal court was a "C.F.R. court" as defined in 25 C.F.R. Pt. 11, which "establishes Courts of Indian Offenses on designated reservations for the purpose of providing adequate machinery of law enforcement for those Indian tribes in which traditional agencies for the enforcement of tribal law and custom have broken down for which no adequate substi-

tute has been provided under Federal or State law." *Id.* The court concluded the records of C.F.R. courts were presumptively agency records belonging to the United States that must be kept at a BIA office, *see* § 11.1(d), and that Red Lake had not demonstrated the necessary elements for exemption under § 11.1(d). *Id.* at 384.

. Accordingly, as in *Red Lake*, this Court must ascertain the nature of the records in determining whether they are agency records under § 3106.

tor General, in her capacity as a judicial nominee, stored by the agency were not "agency records" subject to FOIA because the correspondence was not relied upon by the agency in carrying out its business). Also faulty is Story County's contention that the content of the subject emails is irrelevant because Sheriff Fitzgerald was appointed to the FirstNet Board due to his status as an elected Iowa county official. Not every action taken (or email received/sent) by Sheriff Fitzgerald is carried out in his official capacity as Story County Sheriff nor necessarily relates to his elected duties. Whereas, *Politico* seeks those records *solely* relating to communications made by Sheriff Fitzgerald as a FirstNet Board member. *See* Brown Decl. ¶ 4, Gov't Mot. TRO, ECF No. 2–4. By solely seeking documents relating to Sheriff Fitzgerald's capacity as a FirstNet Board member and not records relating to Sheriff Fitzgerald's capacity as Story County Sheriff, it is clear that *Politico* is using Story County and Sheriff Fitzgerald's role as Story County Sheriff as a mere subterfuge to obtain documents that are specifically exempt from FOIA and therefore not otherwise accessible. It is

undisputed herein that *Politico* would not be entitled to access Sheriff Fitzgerald's FirstNet Board emails had they been sent and/or received via Sheriff Fitzgerald's FirstNet Board email account. Just as Sheriff Fitzgerald's use of his Story County email account to access FirstNet Board emails did not transform the nature of those communications, neither did that use transform *Politico's* lack of access to them. The subject emails were not "produced by or originated from" Sheriff Fitzgerald's role as Story County Sheriff nor were they held by Sheriff Fitzgerald in his official capacity as Story County Sheriff. *See Dubuque Racing,* 420 N.W.2d at 452.

The subject emails are federal records and not subject to Iowa's Public Records Act.

### D. Waiver by the United States

Story County next argues that based upon statements included in Sheriff Fitzgerald's declaration[8] and the declaration of Uzoma Onyeije (Onyeije), Secretary of the FirstNet Board of Directors,[9] it appears that the information sought was dis-

---

8. Paragraph 7 of Sheriff Fitzgerald's declaration states,

> It is my understanding and belief that most, if not all, persons with whom I communicated regarding FirstNet matters by email between March 1 and June 30 of 2013, believed those communications to be confidential. On at least two occasions, I requested to and did enter into non-disclosure agreements with those with whom I was seeking information and advice. From my conversation and exchanges with these individuals and consultants, I know they would not share or provide their information, thoughts, opinions and insights with me regarding FirstNet if they understood these communications would be made public.

Sheriff Fitzgerald's Decl. ¶ 7, Gov't Mot. TRO, ECF No. 2–2.

9. Story County refers to paragraphs 9 and 10 of Onyeije's declaration, which state,

> Each FirstNet Board Member was assigned an NTIA.gov federal government email address on or about September 25, 2012. However, because using the NTIA email addresses required Board Members to log-in from a desktop or use an NTIA-provided Blackberry, the NTIA addresses were not widely or consistently used by any of the Board Members until June 2013 when I informed FirstNet Board Members of the U.S. Department of Commerce policy prohibiting the use of outside email addresses for Department business. Based on information and belief, between September 2012 and June 2013, FirstNet Board Members used outside email accounts to conduct FirstNet business.

Onyeije's Decl. ¶¶ 9–10, Gov't Mot. TRO, ECF No. 2–3.

closed to third parties and thus constitutes waiver. Citing *Watkins v. United States Bureau of Customs and Border Protection*, 643 F.3d 1189 (9th Cir.2011), Story County avers that Sheriff Fitzgerald's receipt of emails sent to Sheriff Fitzgerald by FirstNet members and/or employees on Story County's email system constitutes release to a third party and results in voluntary waiver of any FOIA exclusion or exemption.

■ Story County's waiver argument fails for several reasons. First, Story County misconstrues the basis of this action. Title 47 U.S.C. § 1426(d)(2) provides that "[a]ny action taken or decisions made by First Responder Network Authority shall be exempt from the requirements of .... chapter 5 of Title 5." Thus, the action of the United States does not turn on whether FirstNet did not adequately safeguard its records and thereby subject them to release. Instead, the issue is one of ownership. The United States has the authority to enforce its property interest in its records. *See United States v. Napper*, 694 F.Supp. 897 (N.D.Ga.1988), *aff'd*, 887 F.2d 1528 (11th Cir.1989) (holding that the United States had the right to seek the return of documents the FBI loaned to local law enforcement officials during a murder investigation). In *Napper*, the court reasoned that "[t]he question before the court is who owns, and is entitled to possession of, the documents," not whether the documents are exempt from disclosure under the FOIA. *Id.* at 900.[10] As the owner of the records, the United States, not Story County, has the right to determine whether and to whom the records should be disseminated. Thus, even if the

subject emails had been disseminated to third parties, as Story County contends, it does not transform the character of those records from federal records to Story County records. To the extent *Politico* and others seek disclosure of such federal records, Story County must defer the disclosure request to FirstNet for its consideration under federal law. *Politico* must pursue access rights, if any, directly with FirstNet.

■ Story County puts misplaced reliance on *Watkins* for the proposition that public disclosure of a record otherwise protected under one of FOIA's nine exemptions, *see* 5 U.S.C. § 552(b), constitutes waiver of that exemption. In *Watkins*, the Ninth Circuit found that a FOIA request for the release of notices of seizure of infringing merchandise from various U.S. ports should have been granted holding that "[a]lthough Exemption 4 [FOIA's trade secret exemption] applies to Notices of Seizure, shielding them from public disclosure, [the U.S. Bureau of Customs and Boarder Protection] waived the confidentiality of the Notices by disclosing them to trademark owners without any limits on further dissemination." *Watkins*, 643 F.3d at 1196. The court went on to opine that "[t]he government 'waives' protection under Exemption 4 when it releases purportedly confidential information to the public." *Id.* The *Watkins* court reasoned that public disclosure constituted waiver because the information subject to the FOIA request had been released to trademark owners without limitation on further dissemination. *Id.* In the present case, the subject emails were not *released* to any-

---

**10.** Story County argues *Napper* involved the loan of records by the United States, which implies an understanding requiring a meeting of the minds, and in the present case there was no agreement, notice, or discussion regarding Sheriff Fitzgerald's use of the Story County email system to conduct FirstNet business. As previously discussed, any misuse of Story County's email system by Sheriff Fitzgerald is a collateral issue that does not change the nature of the subject emails as federal records.

one, and therefore no waiver occurred. Sheriff Fitzgerald's use of his Story County email account for sending and receiving FirstNet Board communications does not constitute release of those emails; *Politico* cannot rely on Sheriff Fitzgerald's use of his Story County email account as an end-around the statutory protection that covers those subject emails from FOIA. Cf. *Judicial Watch v. U.S. Secret Serv.*, 726 F.3d 208, 216, 225–26 (D.C.Cir.2013) (reasoning that since it was "undisputed that a requester could not use FOIA to compel the President or his advisors to disclose their own appointment calendars or visitor logs," the access to White House appointment calendars and visitor logs by the U.S. Secret Service, of whom Congress requires the President to accept the protection, does not negate Congress' obvious intent to exclude those records' from FOIA and concluding that "where Congress has intentionally excluded a governmental entity from the Act, [the court] ha[s] been unwilling to conclude that documents or information of that entity can be obtained indirectly, by filing a FOIA request with an entity that is covered under that statute").

■ In addition, it is Story County that bears the initial burden of production to show that the withheld information has been officially disclosed. *See, e.g., Assassination Archives & Research Ctr. v. CIA*, 334 F.3d 55, 59 (D.C.Cir.2003) ("[A]n agency may waive its claim that information is exempt from disclosure if a FOIA [requester] carries his 'burden of pointing to specific information in the public domain that appears to duplicate that being withheld.'" (quoting *Afshar v. U.S. Dep't of State*, 702 F.2d 1125, 1130 (D.C.Cir.1983))); *Davis v. U.S. Dep't of J.*, 968 F.2d 1276, 1279 (D.C.Cir.1992) (same). Story County has offered no evidence of any official disclosure of the subject emails to Story County or to any other third party, much less to the public. Beyond Sheriff Fitzgerald

having used his Story County email account to send and receive the subject emails, there is no evidence that Sheriff Fitzgerald voluntarily disseminated the subject emails to other Story County employees. Additionally, although Story County was able to download the documents from Sheriff Fitzgerald's Story County email account, it did so over Sheriff Fitzgerald's objections. Nor, as Story County argues, does Onyeije's advice to FirstNet Board members to stop using non-NTIA email addresses constitute waiver since transmission of official FirstNet email messages on a system not operated by a federal agency is not prohibited by federal records management law or regulation. *See* 36 C.F.R. § 1236.22. Finally, even if Sheriff Fitzgerald's use of his Story County email account could be treated as disclosure to Story County, carelessness or mistake by an agency in permitting access to certain information is not equivalent to waiver where, as here, the agency takes steps to correct the problem. *See Hersh v. U.S. Dep't of Health & Human Servs.*, No. C 06–4234, 2008 WL 901539, at *7–9 (N.D.Cal. Mar. 31, 2008) (unpublished) (explaining that "documents made publicly available on the docketing system were inadvertently produced by defendants, must be returned to them, and cannot form the basis for a waiver argument"); *Astley v. Lawson*, No. 89–2806, 1991 WL 7162, at *8 (D.D.C. Jan. 11, 1991) (unpublished) (noting that "[a]lthough the memoranda were inadvertently placed into the public record for a period of time, as soon as the [agency] was aware of the mistake it moved to have the documents removed from all public access.... [which] demonstrate[d] that the disclosure was indeed inadvertent, and not inconsistent with the [agency]'s intent to maintain the confidentiality of the memoranda," and concluding the agency had "not improperly withheld any agency records that [we]re subject to disclosure under FOIA").

Story County has failed to demonstrate that the United States waived its ability to restrict the release of the subject emails.

## E. Constitutional Arguments

### 1. First Amendment

■ Story County next argues that interpreting 47 U.S.C. § 1426(d)(2) to exempt all documents surrounding FirstNet from FOIA is overbroad as applied and therefore unconstitutional. Story County further argues that due to the exclusion of the FirstNet statute, the United States should not be able to define the meaning of the limited number of emails sought because they may need to be evaluated in terms of a larger number of emails that comprise a complete conversation. Story County argues that the cases cited by the United States for the general propositions that the First Amendment does not mandate a right of access are irrelevant because this matter does not involve the issues of right of access or the creation of an affirmative duty, rather this case involves disseminating information that is not constitutionally excepted or exempted from the FOIA statute. Story County contends that there is a fundamental denial of a First Amendment right because it is impossible for citizens to exercise their First Amendment right to free speech unless they know what is going on in the government so that they can talk about the information, the public can only receive this information from the government, and in Iowa, the public's mechanism to receive information about its government so free speech can be exercised is Iowa Code ch. 22. According to Story County, unless specifically excepted or exempted by stat-

ute, and that exception or exemption is narrowly tailored, there is an unconstitutional withholding by the government of information that the public would be entitled to have for them to exercise their right of free speech. Accepting the general rhetoric, the Court must disagree under the circumstances of this case.

The fundamental problem with Story County's First Amendment argument is that this action does not turn on whether the records at issue are subject to FOIA, instead, the *only* issue is one of ownership. Because the subject emails are federal records, Story County lacks standing to challenge the constitutionality of 47 U.S.C. § 1426(d) as Story County, inter alia, points to no injury-in-fact it has or will suffer. *See Iowa League of Cities v. E.P.A.*, 711 F.3d 844, 869 (8th Cir.2013) ("To show standing under Article III of the U.S. Constitution, a plaintiff must demonstrate (1) injury in fact, (2) a causal connection between that injury and the challenged conduct, and (3) the likelihood that a favorable decision by the court will redress the alleged injury." (quoting *Young Am. Corp. v. Affiliated Computer Servs. (ACS), Inc.*, 424 F.3d 840, 843 (8th Cir.2005) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)))). The subject emails were requested by *Politico*, and there is no allegation or record evidence that *Politico* has assigned to Story County its rights as requester. Nor does the record show that Story County has filed any statutory request for records with FirstNet.[11]

Story County lacks Article III standing to assert a First Amendment challenge to 47 U.S.C. § 1426.

---

**11.** Story County's attempt to shift the Court's focus from a determination of the ownership rights of the subject emails to a First Amendment challenge nonetheless fails. *See Ctr. of Nat'l Sec. Studies v. U.S. Dep't of J.*, 331 F.3d

918, 924 (D.C.Cir.2003) ("[T]he First Amendment does not 'mandate[] a right of access to government information or sources of information within the government's control." (alteration in original) (quoting *Houchins v.*

## 2. Tenth Amendment

Story County's final argument is that the United States is overreaching and usurping the sovereignty of the State of Iowa by attempting to reach into Story County's email system and prohibit disclosure of Story County email records that are subject to Iowa's Public Records Act. Story County contends that the United States' argument that FirstNet business conducted over Story County's email system makes those emails federal records is a clear intrusion of state sovereignty and a violation of the Tenth Amendment. ·

The Tenth Amendment provides, "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const.

amend. X. As the Supreme Court has noted, the Tenth Amendment is

> but a truism that all is retained which has not been surrendered. There is nothing in the history of its adoption to suggest that it was more than declaratory of the relationship between the national and state governments as it had been established by the Constitution before the amendment or that its purpose was other than to allay fears that the new national government might seek to exercise powers not granted, and that the states might not be able to exercise fully their reserved powers.

*United States v. Darby*, 312 U.S. 100, 124, 61 S.Ct. 451, 85 L.Ed. 609 (1941).

■ The record in this case shows there has been no intrusion into Iowa's sover-

KQED, 438 U.S. 1, 15, 98 S.Ct. 2588, 57 L.Ed.2d 553 (1978))); *cf. N.J. Media Grp., Inc. v. Ashcroft*, 308 F.3d 198, 209, 220 (3d Cir. 2002) (holding that despite a history of open deportation hearings, under the First Amendment "there is no general right of public access to governmental proceedings or information" and thus the newspaper consortium did not have an unfettered right to attend the deportation hearings of persons whom the U.S. Attorney General determined might have connection to or knowledge of the September 11 terrorist attacks and presented significant national security concerns). Instead, the First Amendment "constrains our government from acting in ways which infringe upon our right to free speech; it does not create an affirmative duty upon the government to act," and "[i]t is for Congress to establish the extent of access to the government documents; the first amendment does not do so." *Gartner v. U.S. Info. Agency*, 726 F.Supp. 1183, 1187–88 (S.D.Iowa 1989) (rejecting the allegations made by a journalist, a state legislator, and a newspaper publishing company that the programmatic authority of the United States Information Agency (USIA), 22 U.S.C. § 1461, which authorized the Director of the USIA to disseminate information abroad about the United States, its people and its policies, but prohibited dissemination of such information within the United States, violated their First Amendment right to receive information).

Story County's argument that 47 U.S.C. § 1426(d)(2) has been expanded beyond its intended purpose in a manner inconsistent with § 1426(b)(1)(B) is likewise fatally flawed. Section 1426(b)(1)(B) requires FirstNet to *issue competitive requests to the private sector for proposals for the construction and operation of the FirstNet in a "transparent" manner.* The subject emails are internal communications *among* FirstNet Board members and/or with FirstNet employees and include discussions of legal advice, proposed budgets, draft Board resolutions and minutes, and other internal deliberations. The subject emails are not competitive requests by the FirstNet Board to the private sector for the purpose of building and operating the network. To the extent any of the subject emails touch upon prospective procurement plans by FirstNet, those plans are not final; competitive requests to the private sector but are internal, predecisional sensitive information, the disclosure of which would prematurely reveal the agency's proposed strategy, budget, or schedule for acquiring goods and services. Moreover, that Congress legislatively specified that certain actions must be "transparent" underscores that FirstNet's exception from the FOIA under § 1426(d)(2) was a knowing policy choice.

eignty under the Tenth Amendment by requiring Story County to turn over federal records—Sheriff Fitzgerald's email exchanges as a Special Government Employee serving on the FirstNet Board—and to refrain from disclosing those records. Story County's Tenth Amendment argument is predicated on the erroneous assertion that the subject emails belong to Story County and as such were subject to Iowa's Public Records Act. As previously discussed, the subject emails having been located on Story County's email system did not make them Story County records even under the state's own case law. *See Dubuque Racing*, 420 N.W.2d at 452. This is not a case in which the United States is seeking to restrict any right of Story County to disclose its own records but is instead a case in which the United States is seeking to enforce its own property rights to the subject emails. Even assuming, arguendo, there is conflict between the Iowa Public Records Act and federal law, it is the state statute that must give way. *See, e.g., Oklahoma v. United States*, 161 F.3d 1266, 1272 (10th Cir.1998) (affirming provision of the federal Driver's Privacy Protection Act that prohibited states from disclosing personal information obtained by its department of motor vehicles holding that Congress does not "impermissibly invade areas reserved to the states under the Tenth Amendment because it exercises its preemptive authority under the Commerce Clause in a manner that displaces state law and policy to some extent").

Story County's Tenth Amendment argument fails.

## III. CONCLUSION

Although seriously conflated by Story County, the question before this Court was a very narrow one: Do the subject emails belong to the United States or to Story County? The evidence and applicable law

demonstrate that they are federal records that belong to the United States. Public access to those records is a question for another day and another forum. Thus, for the reasons stated, Story County's Motion to Dismiss/Summary Judgment, ECF No. 7, must be **denied,** and the United States' Motion for Summary Judgment, ECF No. 12, must be **granted.**

The Court hereby declares and decrees that the subject emails and other records sent and/or received by Sheriff Fitzgerald in his capacity as a FirstNet Board member are the property of the United States. Story County, and any party acting on its behalf, is hereby **enjoined** from disclosing the subject emails to any other entity, including but not limited to *Politico*, without the consent of the United States.

**ITS IS SO ORDERED.**