JAMES E. GRITZNER, Senior Judge
This matter comes before the Court on the Motion to Unseal, ECF No. 79, by Intervenors Randy Evans (Evans) and Iowa Freedom of Information Council (Iowa FOI Council) (collectively, Intervenors). Defendants City of Burlington (the City) and Officer Jesse Hill (Hill) (collectively, Defendants) resist. The Court conducted a hearing on the Motion on August 1, 2018. Attorney Michael Giudicessi was present for Intervenors, attorney David O'Brien was present for Plaintiffs, and attorneys Martha Shaff and Brandon Lobberecht were present for Defendants. The matter is fully submitted and ready for disposition.
I. BACKGROUND
On November 14, 2016, Plaintiffs Gabriel Steele (Gabriel), individually, as executor of the estate of his deceased wife Autumn Steele (Autumn) and as next of friend for his minor child, G.S.; Sean Schoff, as next of friend for his minor child, K.S.; and Gina Colbert (collectively, Plaintiffs) filed this lawsuit against Defendants. This lawsuit stems from Autumn's tragic death on January 6, 2015, when she was struck by an errant bullet fired by Officer Hill in response to what Hill perceived as a threat from the Steeles' family dog.
Plaintiffs charged Defendants under 42 U.S.C. § 1983 for violating their rights under the Fourth and Fourteenth Amendments to the United States Constitution. Plaintiffs also sued under Article I, §§ 8 and 9 of the Iowa Constitution and asserted various claims under Iowa tort law against Defendants. Several counts were dismissed by the Court in a prior order on Defendants' motion to dismiss. Steele v. City of Burlington, No. 3:16-cv-00105-JEG (S.D. Iowa May 8, 2017), ECF No. 20.
Early in the case, the parties agreed to the entry of a Protective Order to avoid public disclosure of some case documents. On January 12, 2018, the parties filed cross-motions for summary judgment. Consistent with their Protective Order, the parties' briefs and other documents relating to the cross-motions for summary judgment were filed under seal. On February 24, 2018, Plaintiffs filed a motion to unseal the summary judgment record. The parties' briefs filed in support of and in resistance to Plaintiffs' motion to unseal were filed under seal. On May 24, 2018, the Court held a hearing on the cross-motions for summary judgment. On June *976 5, 2018, prior to the Court's ruling on the pending motions, counsel notified the Court that the case had settled. Thus, the Court did not ultimately decide the motions, and on June 6, 2018, all deadlines and pending motions before the Court were terminated. On August 7, 2018, counsel stipulated to the dismissal of all causes of action filed by Plaintiffs against Defendants, with prejudice, pursuant to the terms of their settlement.
On June 12, 2018, Intervenors filed their motion to unseal all court filings in this case. Evans is executive director of the Iowa FOI Council, a non-profit corporation that "serves as an umbrella organization that seeks to foster and protect access to information from and about government, including the courts." Intervenors' Mot. Unseal ¶ 9, ECF No. 79. The Iowa FOI Council's membership includes, inter alia , the Armstrong Journal , the Business Record , Cedar Rapids Gazette Company, Cityview , Des Moines Register and Tribune Company, Iowa Public Television, N'West Iowa REVIEW , Quad-City Times , Sioux City Journal , and the Storm Lake Times. On June 26, 2018, Defendants filed their resistance, and on July 5, 2018, Intervenors filed their Reply. Plaintiffs do not resist the Motion.
II. DISCUSSION
A. Standard for the Motion
The Court "has supervisory control over its records." Flynt v. Lombardi, 885 F.3d 508, 511 (8th Cir. 2018). "Whether or not to seal a court file is a decision 'best left to the sound discretion of the trial court.' " Duckworth v. St. Louis Metro. Police Dep't, 654 F. App'x 249, 250 (8th Cir. 2016) (unpublished per curiam) (quoting United States v. Webbe, 791 F.2d 103, 106 (8th Cir. 1986) ).
B. Common-Law Right of Access
Intervenors assert they have a common-law right of access to the court filings in this case. "Generally speaking, there is a common-law right of access to judicial records, but that right is not absolute." Flynt, 885 F.3d at 511 (citing Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597-98, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978) ) ). "The primary rationales for this right are the public's confidence in, and the accountability of, the judiciary." Id. (citing IDT Corp. v. eBay, 709 F.3d 1220, 1222 (8th Cir. 2013) ). "Whether the common-law presumption can be overcome is determined by balancing 'the interests served by the common-law right of access ... against the salutary interests served by maintaining confidentiality of the information sought to be sealed.' " Id. (alteration in original) (quoting IDT, 709 F.3d at 1223 ). "In order to adjudicate the issue, [the Court] must first decide if the documents in question are 'judicial records,' and if so, must next consider whether the party seeking to prevent disclosure has overcome the common-law right of access that would otherwise apply to such records." Id. (quoting IDT, 709 F.3d at 1222-23 ).
1. Judicial records
Defendants, in resistance, contend Intervenors lack a common-law right of access to the court filings in this case because the filings are not judicial records. "There may be a historical case to be made that a civil complaint filed with a court, but then soon dismissed pursuant to settlement, is not the sort of judicial record to which there is a presumption of public access." IDT, 709 F.3d at 1222-23. However, the Eighth Circuit has recognized "a modern trend in federal cases to treat pleadings in civil litigation (other than discovery motions and accompanying exhibits)
*977 as presumptively public, even when the case is pending before judgment, or resolved by settlement." Id. at 1222-23 (internal citations omitted) (citing cases from the First, Third, Ninth, and Eleventh Circuit Courts of Appeals and noting that in the case before it, the parties did not dispute that the antitrust complaint filed in the lawsuit which settled without court resolution was a " 'judicial record' to which a common-law right of access attaches").
The Eighth Circuit has not addressed whether summary judgment records, including briefs and appendices, constitute judicial records in a case that has settled before the Court could rule on the dispositive motion. However, multiple U.S. Circuit Courts of Appeals and U.S. District Courts have broadly concluded that "the presumption of public access (and concomitant need to articulate a compelling reason for non-disclosure) attaches to documents filed with the court in support of merits-based motions." Krueger v. Ameriprise Fin., Inc., CIV. NO. 11-2781 (SRN/JSM), 2014 WL 12597948, at *8 (D. Minn. Oct. 14, 2014) (collecting cases), adopted by, No. 11-CV-02781 SRN/JSM, 2015 WL 224705 (D. Minn. Jan. 15, 2015) ; see FTC v. AbbVie Prods. LLC, 713 F.3d 54, 63 (11th Cir. 2013) (holding that "material filed with discovery motions is not subject to the common-law right of access, whereas discovery material filed in connection with pretrial motions that require judicial resolution of the merits is subject to the common-law right," and paradigmatic materials that "invoke 'judicial resolution of the merits' " include "complaints, motions to dismiss, or motions for summary judgment" (citation omitted) ); In re U.S. for an Order Pursuant to 18 U.S.C. Section 2703(D), 707 F.3d 283, 290-91 (4th Cir. 2013) (reaffirming that "documents filed with the court are 'judicial records' if they play a role in the adjudicative process, or adjudicate substantive rights," including "discovery documents filed in connection with a dispositive motion, such as a motion for summary judgment"); Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 121 (2d Cir. 2006) ("Our precedents indicate that documents submitted to a court for its consideration in a summary judgment motion are-as a matter of law-judicial documents to which a strong presumption of access attaches, under both the common law and the First Amendment," even where the district court had not yet "ruled on the underlying summary judgment motion"); Baxter Int'l, Inc. v. Abbott Labs., 297 F.3d 544, 546 (7th Cir. 2002) ("[D]ispositive documents in any litigation enter the public record notwithstanding any earlier agreement. How else are observers to know what the suit is about or assess the judges' disposition of it?"); San Jose Mercury News, Inc. v. U.S. Dist. Court-N. Dist. (San Jose), 187 F.3d 1096, 1102 (9th Cir. 1999) (explaining that "the unbroken string of authorities ... leaves little doubt" that "the federal common law right of public access extends to materials submitted in connection with motions for summary judgment in civil cases prior to judgment"); Leucadia, Inc. v. Applied Extrusion Techs., Inc., 998 F.2d 157, 164 (3d Cir. 1993) ("[T]here is a presumptive right of public access to pretrial motions of a nondiscovery nature, whether preliminary or dispositive, and the material filed in connection therewith."); FTC v. Std. Fin. Mgmt. Corp., 830 F.2d 404, 409 (1st Cir. 1987) (holding that "relevant documents which are submitted to, and accepted by, a court of competent jurisdiction in the course of adjudicatory proceedings, become documents to which the presumption of public access applies," and "[o]nce those submissions come to the attention of the district judge, they can fairly be assumed to play a role in the court's deliberations").
*978 Defendants argue that the summary judgment records should nonetheless remain under seal because the Court did not rule on the cross-motions for summary judgment. Of the U.S. Circuit Courts of Appeals, only the D.C. Circuit has stated, unequivocally, that a judicial decision is a prerequisite to judicial record status. See SEC v. Am. Int'l Grp., 712 F.3d 1, 3 (D.C. Cir. 2013) ("[T]he concept of a judicial record assumes a judicial decision, and with no such decision, there is nothing judicial to record." (citation and internal quotation marks omitted) ).[1] This rationale is contrary to the Eighth Circuit's characterization of judicial records. As the IDT court recognized, the modern federal trend is to treat materials like pleadings as judicial records "even when the case is pending before judgment, or resolved by settlement ." IDT, 709 F.3d at 1223 (emphasis added) (internal citations omitted). Consistent with this trend, the First, Second, Third, Fourth, Seventh, Ninth, and Eleventh Circuits describe materials filed in support of or opposition to summary judgment as judicial records without caveating that judicial record status is conditioned on a decision of the Court. See supra Part II.B (collecting cases). The logic behind this principle is sound; if judgment by the Court was a precondition to judicial record status, numerous pleadings and other filings relating to merit-based motions would never be available for public scrutiny, leaving the general public in the dark about the core issues that drive a lawsuit. Moreover, the records did "play a role in the adjudicative process" with the Court's hearing on the cross-motions for summary judgment. See In re U.S., 707 F.3d at 290-91. Even with a finding that summary judgment materials sans judgment are judicial records, Defendants can still overcome the presumption of access and maintain the confidentiality of the documents by providing the Court "compelling reasons for doing so." Flynt, 885 F.3d at 511.
Several courts have taken another approach: classifying as judicial records only those documents that were relevant to the resolution of the merits of a case. See, e.g., Krueger, 2014 WL 12597948, at *9 ("[N]ot all documents filed by parties are 'judicial records'; instead, only those documents that are relevant to and integrally involved in the resolution of the merits of a case are judicial records to which the presumption of public access attaches."); G & C Auto Body Inc v. Geico Gen. Ins. Co., 2008 WL 687372, at *2 (N.D. Cal. Mar. 11, 2008) (finding that extraneous materials attached to a summary judgment motion and not directly relevant to the issues raised in the motion are not "judicial document[s] subject to the heightened 'compelling reasons' standard" (citation omitted) ). But see United States v. Kravetz, 706 F.3d 47, 58 (1st Cir. 2013) (rejecting "an approach to public access that would turn on whether the documents at issue actually played a role in the court's deliberations"); Lugosch, 435 F.3d at 123 ("[T]o equate the weight of the presumption with the disposition of each particular claim would require the Court to review the documents under varying standards, which would be extremely difficult and a waste of judicial resources." (citation omitted) ). Even were the Court to follow the approach of *979 Krueger and Geico, the question before those courts was whether or not to unseal summary judgment records after the courts had ruled on the dispositive motions. In the current context-where the parties have settled before judicial resolution of the cross-motions for summary judgment-the Court is no longer in a position to reach findings on what is and is not relevant. The case has settled, the parties have stipulated to a dismissal, with prejudice, of all of the causes of action in the underlying lawsuit, and any finding by this Court as to the relevance of various records in this case would be an unconstitutional advisory opinion. See Cass Cty. v. United States, 570 F.2d 737, 740 (8th Cir. 1978) ("[T]he federal courts established pursuant to Article III of the Constitution do not render advisory opinions.... '[C]oncrete legal issues, presented in actual cases, not abstractions,' are requisite." (first alteration in original) (quoting Golden v. Zwickler, 394 U.S. 103, 108, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969) ) ); id. at 739 ("A 'controversy' ... must be one that is appropriate for judicial determination. A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot." (quoting Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240, 57 S.Ct. 461, 81 L.Ed. 617 (1937) ) ). The Court finds the documents filed in conjunction with Plaintiffs' and Defendants' cross-motions for summary judgment are judicial records to which the common-law presumption of access attaches.
The Court next considers whether Plaintiffs' terminated motion to unseal and the corresponding briefs filed by the parties are judicial records. Unlike pleadings and documents filed in conjunction with motions for summary judgment, the Court would not have considered the terminated motion to unseal and corresponding briefs in determining the litigants' substantive rights on the merits of the underlying issues. Cf. AbbVie Prods. LLC, 713 F.3d at 63 (providing that judicial records must "invoke 'judicial resolution of the merits,' such as complaints, motions to dismiss, or motions for summary judgment"). The records relating to the terminated motion to unseal are more analogous to "discovery motions and accompanying exhibits." See IDT, 709 F.3d at 1223. The Court thus concludes that Plaintiffs' terminated motion to unseal and the accompanying briefs are not judicial records to which the common-law presumption of access attaches.
2. Right of Access to Summary Judgment Records
Having concluded that Plaintiffs' and Defendants' cross-motions for summary judgment, as well as their accompanying briefs and appendices, constitute judicial records, the Court next considers whether Defendants have "overcome the common-law right of access that would otherwise apply to such records." Flynt, 885 F.3d at 511 (quoting IDT, 709 F.3d at 1222-23 ). "The presumption of public access to judicial records may be overcome if the party seeking to keep the records under seal provides compelling reasons for doing so." Id. (citing In re Neal, 461 F.3d 1048, 1053 (8th Cir. 2006) ). "Although the court is given ... supervisory power [over its records], 'only the most compelling reasons can justify non-disclosure of judicial records.' " Neal, 461 F.3d at 1053 (quoting In reGitto Glob. Corp., 422 F.3d 1, 6 (1st Cir. 2005) ). The Court must weigh the "balance of interests" between the common-law right of access and the benefits of maintaining confidentiality, Flynt, 885 F.3d at 512, "in light of the relevant facts and circumstances of the particular case,"
*980 IDT, 709 F.3d at 1223 (quoting Nixon, 435 U.S. at 599, 98 S.Ct. 1306 ).[2]
a. Weight of the Common-Law Presumption of Access
The Court first considers the weight of the common-law presumption of access to the summary judgment records in this case. "[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and [the] resultant value of such information to those monitoring the federal courts." IDT, 709 F.3d at 1224 (quoting United States v. Amodeo, 71 F.3d 1044, 1049 (2d Cir. 1995) ). "[J]udicial records and documents generally will fall 'somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance.' " Id. at 1223 (quoting Amodeo, 71 F.3d at 1049 ). "[S]trong weight [should] be accorded the public right of access to judicial documents ... [that] determin[e] litigants' substantive rights-conduct at the heart of Article III." Amodeo, 71 F.3d at 1049. Conversely, materials play "only a negligible role in the performance of Article III duties," IDT, 709 F.3d at 1224 (quoting Amodeo, 71 F.3d at 1050 ), where "[t]he court never adjudicated any aspect of the claim on the merits [and] its only action before ... [the party's] intervention was to enter a stipulated dismissal based on a settlement." id."In this circumstance, 'the weight of the presumption is low and amounts to little more than a prediction of public access absent a countervailing reason.' " Id. (quoting Amodeo, 71 F.3d at 1050 ).
Here, Plaintiffs and Defendants settled their underlying dispute while the cross-motions for summary judgment were pending. Because the documents filed in conjunction with the cross-motions for summary judgment did not determine the litigants' substantive rights, the weight of the presumption of access is not "strong." See Amodeo, 71 F.3d at 1049. Although the Court "never adjudicated any aspect of the claim on the merits," IDT, 709 F.3d at 1224, the Court did more than simply "enter a stipulated dismissal based on a settlement," cf. id. Unlike IDT, where the parties settled just three weeks after the filing of a sealed complaint, here, Plaintiffs' and Defendants' dueling summary judgment motions and accompanying records were fully submitted. Furthermore, the Court conducted a hearing during which the parties and the Court considered the summary judgment records as they affected the merits of the underlying lawsuit. The hearing was not "only to determine whether to seal" or unseal the records. Cf. id. (quoting Riker v. Fed. Bureau of Prisons, 315 F. App'x 752, 755 (10th Cir. 2009). As such, the summary judgment records played more than a "negligible role in the performance of [the Court's] Article III duties." Cf. id.; see also Lugosch, 435 F.3d at 123 (holding that "the weight of the presumption given to [summary judgment records] ... is of the *981 highest: 'documents used by parties moving for, or opposing, summary judgment should not remain under seal absent the most compelling reasons ,' " even where the district court did not render a decision on the motions (citation omitted) ). The fact that this case concerns alleged wrongdoing involving a public entity, the City, and one of its officials, Officer Hill, lends additional weight to the presumption. See Nixon, 435 U.S. at 597-98, 98 S.Ct. 1306 (recognizing interests in "the citizen's desire to keep a watchful eye on the workings of public agencies, and in a newspaper publisher's intention to publish information concerning the operation of government" (internal citations omitted) ).
The Court concludes that the summary judgment records in this case carry, at minimum, a heightened presumption of access. See Amodeo, 71 F.3d at 1049-50 ("Where statements or documents in the middle of the continuum are at issue, the weight to be accorded to the presumption of access must be determined by the exercise of judgment.... Where such documents are usually filed with the court and are generally available, the weight of the presumption is stronger than where filing with the court is unusual or is generally under seal.").
b. Countervailing Reasons for Nondisclosure
The Court next weighs Defendants' countervailing reasons for nondisclosure. Among the "compelling reasons" for nondisclosure that the Eighth Circuit has recognized are personal and professional safety, the need to protect sensitive business information, and personal privacy. See Flynt, 885 F.3d at 511-12 (affirming the decision of the district court to keep death penalty records under seal, as "[t]he personal and professional safety of one or more members of the execution team, as well as the interest of the State in carrying out its executions, were sufficiently in jeopardy to overcome the common-law right of public access to the records," and where the State presented evidence that "pharmacists, once identities were revealed, were harassed and threatened," as well as "public statements made by groups seeking to exert 'publicity and coercion' on those involved in helping states perform executions"); IDT, 709 F.3d at 1224 (denying public interest group's motion to unseal a civil antitrust complaint involving patented technologies because the possible harm in unsealing outweighed the public interest group's generalized interest in the complaint); Webster Groves Sch. Dist. v. Pulitzer Publ'g Co, 898 F.2d 1371, 1377 (8th Cir. 1990) (holding that news organization's interest in unsealing the district court's file in a case between a public school district and a fourteen-year-old disabled student was clearly "outweighed by [the student's] privacy interest and the state's interest in protecting minors").
Defendants have cited none of these recognized interests. Instead, Defendants' central argument is that because Iowa law deems certain materials confidential-specifically, Officer Timothy Merryman and Hill's body camera videos, Hill's medical records, and the Iowa Division of Criminal Investigation (DCI) investigative files-the Court must defer to Iowa law as a compelling reason for maintaining confidentiality. Defendants argue the City is subject to a significant likelihood of prejudice if disclosure is allowed, as the City is currently defending itself in an open records proceeding before the Iowa Public Information Board (IPIB), and a decision by this Court that there is a common-law right of access would supersede the IPIB's adjudicatory process.[3] Defendants fear that a *982 ruling by this Court that the documents are not confidential could subject Defendants to monetary penalties for non-compliance with Iowa Code § 22 (the Iowa Open Records Act) based on a finding of res judicata by the IPIB. Defendants also argue there is no significant need for public access to the documents at issue, because the first twelve seconds of Hill's body camera footage have already been released to the public. Defendants finally note they only provided their materials to the Court pursuant to a protective order, in order to facilitate a ruling of summary judgment in their favor, without ever intending that the materials become part of a public record.
Defendants' countervailing reasons for maintaining the summary judgment records under seal carry insufficient weight in the Court's balancing assessment. Defendants' primary argument is that the materials are confidential because Iowa law controls them. This argument is problematic in several respects. As explained supra in Part II.B.1, the documents filed in conjunction with the cross-motions for summary judgment are judicial records belonging to the Court. If the Court's judicial records were beholden to Iowa's confidentiality rubric, then certain records filed in conjunction with motions for summary judgment could never be released, even if "the relevant facts and circumstances of the particular case" dictated those records carried the strongest presumption of access. See IDT, 709 F.3d at 1223 (quoting Nixon, 435 U.S. at 599, 98 S.Ct. 1306 ). This plainly conflicts with the federal common-law right of access to judicial records-and where "there is conflict between the Iowa Public Records Act and federal law, it is the state statute that must give way."[4] United States v. Story Cty., 28 F.Supp.3d 861, 877 (S.D. Iowa 2014) ; cf. Ponce v. City of Onawa, No. 1:03-CV-30064, 2004 WL7332831, at *1 (S.D. Iowa Oct. 6, 2004) ("[I]t is appropriate for a federal court to respect privileges accorded by the law of the forum state where 'this can be accomplished at no substantial cost to federal substantive and procedural policy.' " (emphasis added) (citation omitted) ). The only exception that courts have recognized to the applicability of the federal common-law presumption of access is when Congress has spoken to the issue. See Nixon, 435 U.S. at 599, 603-06, 98 S.Ct. 1306 (beginning with the assumption that the common-law right of access covered the release of presidential tapes sought by the media, and holding that through the Presidential Recording Act, "Congress has created an administrative procedure for processing and releasing [the tapes] to the *983 public," and this "congressionally prescribed avenue of public access .... tips the scales in favor of denying release"); Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice, 331 F.3d 918, 937 (D.C. Cir. 2003) (holding that, in the context of a Freedom of Information Act (FOIA) request for Department of Justice (DOJ) records, "Congress has provided a carefully calibrated statutory scheme, balancing the benefits and harms of disclosure. That scheme preempts any preexisting common law right.... [W]e cannot craft federal common law when Congress has spoken directly to the issue at hand.").
Aside from appealing to Iowa law, Defendants have not articulated an independent basis for maintaining the confidentiality of the officers' body camera videos, Hill's record of medical treatment, or DCI's investigative reports-or as the Amodeo court put it, "an assertion by a person or firm of a right of privacy based on an anticipated injury as a result of disclosure." See Amodeo, 71 F.3d at 1050. Defendants have not argued, for example, that Hill has been personally threatened, that Hill's privacy would be compromised by this particular medical record's release,[5] or that the business of DCI and the City would be compromised by release of the records.[6] Nor can Defendants be prejudiced in future litigation. DCI concluded its investigation with no charges filed against Hill, and the underlying civil proceeding in this case has settled. Cf. Webbe, 791 F.2d at 106-07 (denying press access to wiretap audiotapes, which had been admitted into evidence, in part, because there was a chance the tapes would be used again as evidence in future trials related to other pending criminal charges). Furthermore, any decision by the Court regarding the common-law right of access will not prejudice the City in the pending IPIB proceeding. Although the Court's decision regarding the common-law right of access may effectively moot the question before the IBIP regarding the release of certain materials that are contained in both the summary judgment records in this case and the records at issue in the IPIB proceeding, the Court renders no judgment as to the scope of confidentiality under, or the City's compliance with, Iowa Code § 22.
Defendants also argue that the first twelve seconds of Hill's body camera video have already been released, and thus, there is no need to release the remainder of the video. However, both Plaintiffs and Defendants included Hill's complete body camera video in conjunction with their respective motions for summary judgment. Defendants themselves note that these materials were submitted to the Court to resolve summary judgment in their favor: "Defendants filed their summary judgment pleadings [and] materials solely to advance their defense in the litigation to claims they believe are not factually supported by the evidence." Defs.' Resistance Br. 13, ECF No. 81-1. Prior to the hearing on the *984 cross-motions for summary judgment, the Court informed the parties that it considered the first twelve seconds of Hill's body camera video most important to the underlying question of whether or not a Fourth Amendment seizure occurred. Nonetheless, both parties referenced portions of Hill's body camera video that extended beyond the first twelve seconds during the Court's hearing. See, e.g., Summ. J. Hrg. Tr. at 27:12-16, ECF No. 80 (Plaintiffs, in rebuttal, noting, "if you read Officer Hill's report after the fact, he says that the dog was coming at him with his teeth bared and approaching him; but if you listen to the video after the initial occurrence, he doesn't say anything even remotely close to that"); id. at 16:14-17 (Defendants noting "at no time are there words to Gabe or [G.S.] that they are - they can't leave the scene, that they need to back off, he never points a gun at them, there's no evidence to prove that there is a seizure of either of them"). And as previously noted, given the parties' settlement, if the Court opined as to which parts of Hill's body camera video were or were not relevant to the underlying § 1983 dispute, it would constitute an advisory opinion prohibited by Article III. See Cass Cty., 570 F.2d at 739-40. The fact that both parties made representations about unreleased portions of Hill's body camera video at a public court hearing adds weight to the presumption of access in this case.
Defendants finally argue they never intended their summary judgment filings to be made public and only submitted them pursuant to the terms of a protective order. However, "the mere existence of a confidentiality order says nothing about whether complete reliance on the order to avoid disclosure [is] reasonable." Lugosch, 435 F.3d at 126. "The parties cannot, by their own private arrangement, dictate the flow of information in what is otherwise a public proceeding, unless there is good reason to do so." Krueger, 2014 WL 12597948, at *10 (citing Press-Enter. Co. v. Super. Ct. of Cal., 464 U.S. 501, 509, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) ("Closed proceedings, although not absolutely precluded, must be rare and only for cause shown that outweighs the value of openness." (citation omitted) ) ).
The issuance of a protective order early in this litigation was sensible, in order to facilitate discovery and to ensure that any information discovered would not taint a potential jury. But the interests behind the protective order are no longer salient. The result of settlement in this case is that there is no need for additional discovery, and there is no prospective jury to be tainted. See SEC v. TheStreet.Com, 273 F.3d 222, 231 (2d Cir. 2001) ("Where a litigant or deponent could not reasonably have relied on the continuation of a protective order a court may properly permit modification of the order."); Scott v. Sioux City, 96 F.Supp.3d 898, 911 (N.D. Iowa 2015) (finding that an evidentiary ruling of the court should be unsealed, in part, because "[t]he primary purpose of sealing the Evidentiary Ruling, at least before trial, was 'to avoid exposure of potential jurors to information about challenged evidence,' but that purpose has expired" (internal citation omitted) ). Moreover, Defendants' reliance on the protective order to prevent disclosure of summary judgment records is far less reasonable than was reliance on the protective order for general discovery, as summary judgment records can be discussed in a public order of the Court.
Although it is feasible that certain records useful in resolving summary judgment will contain sensitive information that implicates privacy interests, Defendants have not cited, either in their resistance brief or at oral argument, any such *985 privacy interests stemming from the summary judgment records. Rather, they cite the existence of the earlier protective order as an end justification in and of itself for maintaining confidentiality. See Std. Fin. Mgmt., 830 F.2d 412 (holding that "[a] finding of good cause [to impound documents] must be based on a particular factual demonstration of potential harm, not on conclusory statements" (alteration in original) (citation omitted) ). Additionally, as explained infra in Part II.B.3, Defendants can propose redactions to sensitive identifying information before any unsealing occurs. Defendants' countervailing reasons for nondisclosure carry little weight.
c. Balance of Interests
Considering all of the facts, circumstances, and interests advanced by the parties, the Court finds that Intervenors' heightened presumption of access to summary judgment records out-weighs Defendants' countervailing reasons for nondisclosure. See Flynt, 885 F.3d at 511. The balance of interests thus weighs in favor of unsealing the summary judgment records in this case.[7]
3. Opportunity for Redaction
Though the Court finds that the summary judgment records must be unsealed, Defendants request leave of the Court to propose redactions. "[I]t is proper for a district court, after weighing competing interests, to edit and redact a judicial document in order to allow access to appropriate portions of the document." United States v. Amodeo, 44 F.3d 141, 147 (2d Cir. 1995) ; accord IDT, 709 F.3d at 1224 ; see also Scott, 96 F.Supp.3d at 911 (finding that, although "the balance of interests weigh[ed] heavily in favor of unsealing," it was nonetheless "prudent-if ... not actually mandatory-[to] consider whether less drastic measures than unsealing the Evidentiary Ruling in its entirety would adequately serve the competing interests").
Accordingly, Defendants should present proposed redactions to the summary judgment records for the Court to review before unsealing. The proposed redactions must be limited to sensitive identifying information along the lines of what Defendants have proposed in their resistance brief-to "birth dates, personal addresses, and social security numbers," Defs.' Resistance Br. 14, ECF No. 81-1-or to the "personal data identifiers" described in Local Rule 10(g), including social security numbers, dates of birth, names of minors, financial account numbers, and taxpayer identification numbers. Intervenors, at oral argument, agreed that should the Court grant their motion to unseal, Defendants' request for limited redactions would be reasonable. No substantive redactions to the sealed summary judgment records will be allowed.
III. CONCLUSION
Based on the foregoing, Intervenors' Motion to Unseal, ECF No. 79, must be granted in part and denied in part . The Motion is granted as to the records on the cross-motions for summary judgment in this case, ECF Nos. 36, 39, 40, 41, 46, 48, 49, 50, 51, 54, 57, 72, 74, 75, 80. The Motion is denied as to Plaintiffs' terminated motion to unseal and the corresponding briefs, ECF Nos. 62, 65, 66, 68. The unsealing of the summary judgment records will be held in abeyance pending the Court's review of Defendants' submission of proposed redactions to sensitive identifying information as described supra in *986 Part II.B.3. Within fourteen days of the entry of this Order, Defendants must present the Court with an itemized list of locations in the record where they propose limited redactions as described above, identifying only the generic nature of the information. After thorough review of the proposed redactions, the Court will timely unseal the summary judgment records, incorporating those redactions the Court deems appropriate.
IT IS SO ORDERED.

The Court notes that at issue in SEC v. American International Group, 712 F.3d 2-3, was the release of reports compiled by an independent consultant (IC reports) ordered as part of a consent decree. The reports were never filed with the court. Id. at 4 ("[T]hough filing a document with the court is not sufficient to render the document a judicial record, it is very much a prerequisite."). While recognizing "a common law right to inspect and copy public records," which "includes judicial records," the court concluded "the IC reports [we]re neither judicial records nor public records." Id. at 3-4.

Defendants suggest the Court employ the six-factor balancing test set forth in United States v. Hubbard, 650 F.2d 293, 317-21 (D.C. Cir. 1980) (considering (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings). Though some of these factors play into the Court's analysis infra , the Court elects not to use the Hubbard six-factor test, as the Eighth Circuit has not employed this framework for the balancing test in any of its prior decisions on unsealing records.

On July 20, 2018, the IPIB conducted a hearing to address the effect of Iowa Code § 22 on certain records relating to the shooting of Autumn Steele. In that proceeding, the IPIB has asked the parties to submit follow-up briefs by September 4, 2018. (See Joyce Russell, Lawyers Debate the Confidentiality of Body Cam Video in Police Shooting , Iowa Public Radio News (July 20, 2018), http://www.iowapublicradio.org/post/lawyers-debate-confidentiality-body-cam-video-police-shooting#stream/0 ) The IPIB proceeding was initiated over two years ago.

Assuming arguendo the summary judgment records at issue here were subject to Iowa Code § 22, the statute vests courts with the power to order that records covered by a confidentiality exemption be made public. See Iowa Code § 22.7 ("The following public records shall be kept confidential, unless otherwise ordered by a court ...." (emphasis added) ); see also Hawk Eye v. Jackson, 521 N.W.2d 750, 754 (Iowa 1994) (affirming a district court order compelling disclosure of an inquiry report relating to the Burlington Police Department, notwithstanding the investigative report exemption of Iowa Code § 22.7(5) and alternative means of access to essentially the same information, because "any public harm created by the disclosure of the DCI investigatory report is far outweighed by the public harm accruing from its nondisclosure").

In moving to file their resistance to Plaintiffs' motion for summary judgment under seal, Defendants also cited the Health Insurance Portability and Accountability Act of 1996 (HIPAA), Pub. L. 104-191, 101 Stat. 1936, as a basis for maintaining the confidentiality of Hill's medical records. However, in resisting the present motion brought by Intervenors to unseal, Defendants did not cite HIPAA, nor any other federal privilege relating to medical records. Defendants also acknowledged at oral argument on the Motion that the substance of Hill's medical record contained within the summary judgment records is limited.

The Court provided an opportunity to DCI or other interested parties to intervene in this case in order to articulate independent interests in maintaining the confidentiality of the investigative records. Order on Mot. Intervene 5-6, ECF No. 87. No additional party moved to intervene.

Because the Court finds Intervenors have a common-law right of access to the sealed summary judgment records, the Court does not consider Intervenors' additional argument that maintaining these records under seal "raises serious constitutional issues under the First and Fourteenth Amendments." Intervenors' Mot. Unseal ¶ 14, ECF No. 79.