# IN THE SUPREME COURT OF IOWA

No. 20–0657

Submitted October 20, 2021—Filed December 30, 2021

**ADAM KLEIN,**

> Appellant,

vs.

**IOWA PUBLIC INFORMATION BOARD,**

> Appellee,

**BURLINGTON POLICE DEPARTMENT** and **IOWA DEPARTMENT OF PUBLIC SAFETY, DIVISION OF CRIMINAL INVESTIGATIONS,**

> Intervenors–Appellees.

---

Appeal from the Iowa District Court for Polk County, Samantha J. Gronewald, Judge.

An individual seeking the release of law enforcement records appeals the district court's dismissal of his petition for judicial review of a decision of the Iowa Public Information Board. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.**

Mansfield, J., delivered the opinion of the court, in which all participating justices joined. McDermott, J., took no part in the consideration or decision of the case.

Nicholas D. Ott of Ott Law DSM, Des Moines, Rita Bettis Austen (argued) and Shefali Aurora of ACLU of Iowa Foundation, Inc., Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Emily Willits (argued), Assistant Attorney General, for appellee Iowa Public Information Board.

Holly A. Corkery (argued) of Lynch Dallas, P.C., Cedar Rapids, for intervenor–appellee Burlington Police Department.

Thomas J. Miller, Attorney General, and Jeffrey C. Peterzalek, Assistant Attorney General, for intervenor–appellee Department of Public Safety, Division of Criminal Investigations.

**MANSFIELD, Justice.**

### I. Introduction.

This open records case arising out of a tragic shooting requires us to interpret and apply the Iowa Public Information Board Act. The legislature adopted that act less than a decade ago, in 2012. It has not previously been before us.

In 2015, a police officer responding to a 911 call about a domestic assault accidentally shot and killed one of the participants. This incident led to a civil lawsuit and a substantial monetary settlement for the victim's family. It also prompted open records requests.

Dissatisfied with the responses to his open records requests, the family's attorney filed a complaint with the Iowa Public Information Board relying on the 2012 legislation. The Board appointed a special prosecutor to handle the case and, after much procedural maneuvering, an administrative law judge (ALJ) held a contested case hearing in 2018. Following the hearing, in which the family's attorney did not participate, the Board declined to order the disclosure of any records that had not previously been disclosed. The family's attorney petitioned for judicial review, and the district court dismissed the petition based on lack of standing and failure to exhaust administrative remedies. The family's attorney now appeals.

On our review, we conclude that the family's attorney exhausted administrative remedies by filing his complaint with the Board. However, we caution that on judicial review, the family's attorney may only pursue open

records requests that were actually raised before the Board and decided by it. Also, the family's attorney does not have standing to seek the production of records that are now publicly available. For these reasons, we affirm the district court in part, reverse in part, and remand with instructions.

## II. Background Facts and Proceedings.

**A. The Accidental Shooting of Autumn Steele.** On January 6, 2015, Officer Jesse Hill of the Burlington Police Department (BPD) responded to a 911 call from Gabriel Steele, reporting a domestic assault involving his wife, Autumn Steele, and advising she had been arrested the previous day. When Officer Hill arrived, Gabriel was leaving the home, holding a child in his arms. Autumn was following close behind, hitting Gabriel. Officer Hill tried to separate the two. A German shepherd dog owned by the Steeles growled at Officer Hill and bit him on the leg. Officer Hill fired his sidearm intending to shoot the dog. He accidentally shot Autumn instead. Autumn died from her injuries.

After an investigation, the Des Moines County Attorney declined to bring criminal charges against Officer Hill. The Steele family hired an attorney, Adam Klein, to represent them in civil matters related to the shooting. The Steele family filed a civil rights lawsuit in the United States District Court for the Southern District of Iowa against the BPD and Officer Hill in 2016. On June 18, 2018, the family announced a settlement in that case for $2 million in damages.

**B. Klein's Open Records Request.** On February 27, 2015, the Des Moines County Attorney released a seven-page letter describing her factual

and legal review of the incident and explaining her decision not to bring criminal charges against Officer Hill.

Later that same day, Klein submitted open records requests pursuant to Iowa Code chapter 22 to the Iowa Division of Criminal Investigation (DCI), the BPD, and the Des Moines County Attorney. He asked for "any and all public records regarding the Incident, including, but not limited to" certain specific types of records. In response, the DCI disclosed the same information it had already released to the media—the county attorney's letter, press releases, and a link to a twelve-second snippet from Officer Hill's bodycam footage. The DCI declined to provide additional records.

The BPD, in its response, turned over another copy of the county attorney's letter. In addition, it provided personnel information about Officer Hill and information about another dog encounter involving Officer Hill that had been referenced in the county attorney's letter. The BPD declined to provide additional records, asserting the confidentiality privilege for "[p]eace officers' investigative reports" set forth in Iowa Code section 22.7(5) (2015).

The Autumn Steele shooting had generated significant publicity. Around that time, others also served public records requests, including the Burlington Hawk Eye newspaper.

**C. Klein's Complaint with the Public Information Board.** On May 15, Klein filed a complaint against the BPD, the DCI, and the Des Moines County Attorney with the Iowa Public Information Board. The complaint recited Klein's requests and the responses received from the BPD, the DCI, and the county

attorney. Klein requested that the Board "[f]ind that the requested records are not exempt from disclosure under Iowa Code § 22.7(5)" and "[o]rder Respondents to fully disclose all records." The complaint further asked that the respondents be required to reimburse his attorney fees and pay civil penalties. *See* Iowa Code § 22.10. Meanwhile, the Burlington Hawk Eye newspaper also filed a complaint with the Board seeking similar materials. The complaints of Klein and the Hawk Eye were eventually consolidated.

Normally, the Board makes an initial determination as to whether the complaint, "on its face," is within the Board's jurisdiction and "could have merit." *Id.* § 23.8(1). If that determination is favorable, the Board accepts the complaint and then works with the parties to resolve the complaint informally. *See id.* § 23.9. If that is unsuccessful, the Board initiates a formal investigation, following which it makes another assessment on jurisdiction and determines whether probable cause exists to believe a violation of law has occurred. *See id.* § 23.10(1). If so, the Board "shall commence a contested case proceeding under chapter 17A against the respondent." *Id.* § 23.10(3)(*a*).

This case did not take a normal path. The respondents sent letters to the Board seeking dismissal of Klein's complaint. On July 14, the executive director of the Board prepared a preliminary order for dismissal stating that "the information in question appears to be confidential." That order was not adopted by the Board. In September, Klein and the respondents submitted briefs addressing the merits of the complaint. Then, in December, the Board's deputy

director lodged a report stating there was no probable cause to believe a violation had occurred. That report was not adopted by the Board either.

**D. The Special Prosecutor's Petition.** On May 27, 2016, the Board filed a petition against the BPD, the DCI, and the county attorney through its appointed special prosecutor to begin a contested case. But on September 2, an ALJ granted the DCI's and the BPD's motions to dismiss the petition without prejudice because the Board had failed to make a finding of probable cause and jurisdiction as required by statute. *See id.* § 23.10(1).

In response to the ALJ's notice of dismissal, on October 27, the Board entered an order determining that Klein's complaint was within the Board's jurisdiction and that there was probable cause to believe the respondents had "withheld public records as defined therein in response to Complainant's request, including, but not limited to, police audio records, body camera videos, and 911 calls[1] that were subject to disclosure under Iowa Code chapter 22." The order was captioned, "In re the Matter of: Adam Klein, complainant . . . ."[2] The Board once again appointed the same special prosecutor to initiate a contested case.

The special prosecutor refiled his petition on November 4. In a section labeled "Parties, Jurisdiction, and Venue," the petition identified the complainants (Klein and the Hawk Eye) and their complaints. The petition

---

[1] The record refers at times to "a 911 call" and at other times to "all calls." Our understanding is that the initial 911 call has been made public but that there may be other 911 calls related to the incident. To be clear, our ruling in this case covers all 911 calls.

[2] A similar order was entered concerning the Hawk Eye's complaint.

alleged that records showing "the date, time, specific location, and immediate circumstances surrounding the . . . incident" had not been produced, and that neither the bodycam videos nor the 911 calls were "peace officers' investigative reports." It further alleged,

> Among the public records that were requested but which Respondents have wrongfully refused to produce are the following: the recording and transcripts of 911 calls, bodycam videos taken by the officers, videos taken by dashboard cameras, records showing "the date, time, specific location, and immediate circumstances surrounding the . . . incident," and emails regarding the Autumn Steele homicide from and to representatives of the City of Burlington in correspondence with Autumn Steele's family members.

**E. Proceedings Before the ALJ.** The BPD and the DCI moved for summary judgment in the contested case. After lengthy proceedings, the motions were ultimately denied by the ALJ on December 4, 2017.

Meanwhile, the Steele family's federal civil suit was still ongoing. Previously, the federal court had entered a protective order allowing records to be produced to the parties for purposes of that litigation only, without public dissemination. After the federal case settled in June 2018, the Iowa Freedom of Information Council filed a motion to unseal all court filings in that case. *See Steele v. City of Burlington*, 334 F. Supp. 3d 972, 976 (S.D. Iowa 2018). The federal court granted the motion in part, noting that "Defendants have not articulated an independent basis for maintaining the confidentiality of the officers' body camera videos, Hill's record of medical treatment, or DCI's investigative reports." *Id.* at 983, 985–86. As a result, some of the records that were the subject of the Board contested case became publicly available.

The Board contested case went to hearing on July 20, 2018. At the outset of the hearing, the prosecutor requested to amend the petition to require the BPD and the DCI to release the entire "DCI file" in light of the federal civil settlement. In her proposed decision, the ALJ refused that request, noting that "it would be unfair to expand the issues at the time of hearing." However, the ALJ concluded that "the 911 tape, the dashcam videos, and the bodycam videos are not 'confidential' . . . even if they are later placed into a file labeled 'peace officer's investigative report.' " Hence, the ALJ concluded that the BPD and the DCI "failed to comply with Iowa Code Chapter 22 when they determined that all records gathered as part of a criminal investigation, including the 911 call, the body camera video, and the dash camera video, were confidential 'peace officers' investigative reports' under Iowa Code section 22.7(5)." Finally, the ALJ determined that the BPD and the DCI *had* disclosed the "date, time, specific location, and immediate facts and circumstances surrounding [the] incident." *See* Iowa Code § 22.7(5).

**F. The Intra-Agency Appeal by the BPD and the DCI, and the Position Taken by the Special Prosecutor.** The BPD and the DCI filed an intra-agency appeal to the Board. In their briefs, the BPD and the DCI maintained that all documents in the DCI investigative file, including the bodycam videos, the dashcam videos, and the 911 calls, could be withheld as confidential "investigative reports." *Id.*

The prosecutor did *not* appeal the ALJ's ruling. In responding to DCI's brief, the prosecutor summarized the scope of the dispute as follows:

> The present case involves the record of a 911 call from a person reporting the shooting, and bodycam and dashcam videos received from the Burlington Police Department or, in the case of the 911 call, possibly from "Descom," the Des Moines Communications Center. The ALJ held that the disclosure of these items did not threaten the communications made to the officer in "official confidence" outlined in any of the three cases.

The special prosecutor argued that those items were not investigative reports within the meaning of the statute because they "did not result from a DCI investigation." The special prosecutor urged that the ALJ's ruling was "correct and should be adopted by the Board."

At the hearing before the Board, the special prosecutor reiterated that the dispute was limited to the three items:

> I endorse the proposed opinion that was made by the administrative law judge who I think got everything right during the course of this case, except for a couple of things . . . that I don't agree with, but certainly haven't appealed. So, I'm defending her conclusion that none of these items, these three items, these three discrete items . . . are not investigative reports within the meaning of the statute.

**G. The Board's Final Decision.** The Board issued its final decision on February 21, 2019. In sum, the Board found that the BPD and the DCI had "complied with Iowa Code chapter 22." The Board's final decision incorporated the ALJ's determination that the BPD and the DCI had met the requirement to disclose "the date, time, specific location, and immediate facts and circumstances surrounding [the] incident" by providing the county attorney's letter. As noted, the special prosecutor had not contested that determination, nor had it appealed the ALJ's proposed decision.

On the issue that was contested, the Board overruled the ALJ's ruling that the BPD and the DCI had an obligation to release the bodycam video, the dashcam video, and the 911 call or calls. The Board reasoned, "Under Iowa Code section 22.7(5), the 911 call, the body camera video, and the dash camera video were part of the confidential 'peace officers' investigative reports' and not required to be disclosed in response to a public records request." Accordingly, the Board dismissed the special prosecutor's petition.[3]

Klein was on the service list for filings and orders in the contested case proceeding. However, he did not intervene, make any filings under his name, or appear at any of the status conferences or hearings.

**H. The Current Judicial Proceeding.** On March 22, Klein filed a petition for judicial review in the Polk County District Court seeking to overturn the Board's final decision. In addition to reversal of the contested case decision, Klein's petition sought "all records Mr. Klein requested from the DCI . . . as well as those records Mr. Klein requested from the [BPD]," a "declaratory ruling that 911 calls, bodycam video, and dashcam video are not 'peace officers' investigative reports,'" a "declaratory ruling that peace officers' investigative reports are only potentially confidential so long as the investigation is ongoing," and a "declaratory ruling that even when deemed potentially confidential, peace

---

[3]The Board's decision came out shortly before we decided *Mitchell v. City of Cedar Rapids*, 926 N.W.2d 222 (Iowa 2019). *Mitchell* arose out of a different officer-involved shooting and addressed Iowa Code section 22.7(5). *See id.* at 224–25. There, we upheld a trial court order directing the production of reports prepared within ninety-six hours of the incident, excluding police internal review records. *Id.* at 225.

officers' investigative reports . . . are subject to the *Hawk Eye*[4] and *Shanahan*[5] 3-part balancing test to weigh the public interest in disclosure against the government interest in nondisclosure."

The BPD and the DCI intervened in the judicial review proceeding. The Board moved to dismiss Klein's petition, raising three arguments: "(1) [the petition] improperly combines a petition for judicial review with a petition for declaratory relief; (2) Petitioner did not exhaust administrative remedies; and (3) Petitioner lacks standing." The district court agreed with the first point and, on July 15, dismissed Klein's declaratory relief claims. The court explained,

> [The petitioner] is seeking both appellate review of the [Board]'s Final Decision as well as asking the Court to exercise original authority to make certain declaratory rulings. . . . As the Court in *Black* [*v. University of Iowa*, 362 N.W.2d 459, 462 (Iowa 1985),] clearly stated "[f]undamentally, in judicial review proceedings the district court exercises only appellate jurisdiction and has 'no *original* authority to declare the rights of parties or the applicability of any statute or rule.'" As such, the Court finds that the Petition improperly combines a petition for judicial review and petition for declaratory judgment.

(Fourth alteration in original.)

At that time, the court did not dismiss the remainder of the petition. The parties submitted briefs on the merits of the case. On December 13, the court heard oral argument on the merits.

On March 23, 2020, the district court issued a ruling that did not reach the merits of the case. Instead, the court dismissed the balance of Klein's judicial

---

[4]*Hawk Eye v. Jackson*, 521 N.W.2d 750 (Iowa 1994).

[5]*State ex rel. Shanahan v. Iowa Dist. Ct.*, 356 N.W.2d 523 (Iowa 1984).

review petition for failure to exhaust administrative remedies. The district court found, in essence, that Klein had not been a party to the contested case before the Board, that he should have intervened in that case, and that his failure to do so prevented him from seeking judicial review of that proceeding. The court cited *Public Employment Relations Board v. Stohr*, 279 N.W.2d 286 (Iowa 1979), as the controlling case. It interpreted *Stohr* as standing for the proposition that "those seeking judicial review [must] be a 'party' to the contested case" in order to exhaust all administrative remedies. In the court's view, the mere act of filing a complaint with the Board did not make Klein a party to the contested case that resulted from his complaint.

On the standing issue, the district court held that Klein had standing, but only to challenge the failure to release the dashcam footage, not the other items he sought. The court observed that "the only records actually addressed [in the Board's final decision] were the bodycam footage, the dashcam footage, and the 911 calls." Of those, the bodycam footage and a 911 call had already been made public. Therefore, the court reasoned, the only issue that was both properly preserved and not moot was whether the dashcam footage should be released.

Klein appealed the district court's dismissal, arguing three things: (1) he had exhausted administrative remedies by filing a complaint with the Board; (2) he had standing to challenge the denial of all records he originally requested; and (3) declaratory relief is available to him on judicial review. We retained the appeal.

**III. Standard of Review.**

Denial of a petition for judicial review based on a lack of standing and failure to exhaust administrative remedies is reviewed for correction of errors at law. *Dickey v. Iowa Ethics & Campaign Disclosure Bd.*, 943 N.W.2d 34, 37 (Iowa 2020) ("We review a decision by the district court to dismiss a case based on the lack of standing for errors at law." (quoting *Foodservice Distrib., Inc. v. Iowa Educators Corp.*, 812 N.W.2d 600, 604 (Iowa 2012))); *see also Segura v. State*, 889 N.W.2d 215, 219 (Iowa 2017) (reviewing a dismissal for failure to exhaust administrative remedies for correction of errors at law). Likewise, the dismissal of a declaratory relief claim is reviewed for correction of errors at law. *See Marek v. Johnson*, 958 N.W.2d 172, 176 (Iowa 2021) ("We review the district court's grant of a motion to dismiss a petition for correction of errors at law." (quoting *Sierra Club Iowa Chapter v. Iowa Dep't of Transp.*, 832 N.W.2d 636, 640 (Iowa 2013))).

**IV. Analysis.**

**A. Chapter 23 Structure.** The Board was established in 2012 when the general assembly passed the Iowa Public Information Board Act. *See* 2012 Iowa Acts ch. 1115, §§ 4–16 (codified at Iowa Code § 23 (2013)). The Board had its first meeting on July 19, 2012. *See About IPIB*, Iowa Pub. Info. Bd., https://ipib.iowa.gov/about-ipib (last visited Oct. 26, 2021) (follow *Annual Report 2013* hyperlink). Since then, the Board has received hundreds of complaints, many of them informal. *See generally id.* (annual totals of formal and informal complaints available in hyperlinked annual reports). But only three

contested cases have reached the hearing stage. *See Contested Cases*, Iowa Pub. Info. Bd., https://ipib.iowa.gov/contested-cases [https://perma.cc/7S2Z-48YM] (containing the Board's contested case decisions and settlements). Klein's complaint against the DCI and the BPD was the second of these. *Id.*

Given the short time period the Board has been in existence and the relatively few complaints that have turned into contested cases, it should come as no surprise that we have not grappled with Iowa Code chapter 23 before. Accordingly, we will provide some background before discussing whether Klein could properly bring this petition for judicial review.

1. *Purpose.* Chapter 23 begins with an explanation of the legislature's purpose in creating the statute:

> The purpose of this chapter is to provide an alternative means by which to secure compliance with and enforcement of the requirements of chapters 21 [open meetings] and 22 [open records] through the provision by the Iowa public information board to all interested parties of an efficient, informal, and cost-effective process for resolving disputes.

Iowa Code § 23.1.

2. *Election of remedies and preference given to Board complaints over district court actions.* Iowa Code section 23.5 offers a choice to persons seeking to enforce the open records law. Section 23.5, titled "Election of remedies," provides, "An aggrieved person . . . may seek enforcement of the requirements of chapter[] 22 by electing either to file [a district court action], or in the alternative, to file a timely complaint with the board." *Id.* § 23.5(1). If one person brings a district court action and someone else files a complaint with the Board relating to the same matter, "the court in which the action was filed shall stay the action

pending resolution of the complaint with the board," and the person who filed an action is authorized also to file a complaint with the Board. *Id.* § 23.5(2).

3. *Complaint format.* The statute does not identify any formal requirements for complaints, leaving this for the Board to determine by rule. *See id.* § 23.7(1). The Board's administrative rules require that a complaint be in writing and meet certain criteria to be accepted by the Board. Those rules state, "The complaint shall allege a violation of Iowa Code chapter 21 or 22; provide specific facts in support of the allegation, including the identification of persons and government entity involved in the alleged violation; and provide the specific relief sought." Iowa Admin. Code r. 497—2.1(23).

4. *Initial processing and efforts to achieve informal resolution.* Once a formal complaint is filed, the Board must determine whether it has jurisdiction over the complaint and whether the complaint could have merit. If the Board determines a complaint could have merit on its face and is within the Board's jurisdiction, the Board is required to "accept the complaint, and . . . notify the parties of that fact in writing." Iowa Code § 23.8(1). On the other hand, if the Board rejects a complaint, the Board is only required to notify the complainant. *See id.* § 23.8(2).

Rejection of a complaint at the outset leaves the complainant with no further recourse. Thus, it would seemingly constitute final agency action and open the door for the complainant to seek judicial review. *See id.* § 17A.19(1) ("A person or party who has exhausted all adequate administrative remedies and

who is aggrieved or adversely affected by any final agency action is entitled to judicial review.").

Once a complaint is accepted, the Board is required to "notify the parties of that fact in writing" and to "promptly work with the parties, through employees of the board, to reach an informal, expeditious resolution of the complaint." *Id.* §§ 23.8(1), .9. At this point, the focus is still on the complaint and resolving the dispute between the complainant and the respondent. *See id.* Notably, at this stage, the complainant is deemed one of the "parties." *Id.*

5. *Investigation and probable cause determination.* If informal assistance is unsuccessful in resolving the matter, the Board initiates "a formal investigation concerning the facts and circumstances set forth in the complaint." *Id.* § 23.10(1). During the investigation, the Board is required to determine whether probable cause exists and whether it has jurisdiction. *Id.* If either is absent, the Board must issue a written order dismissing the complaint and notify "the complainant" and "the party against whom the complaint was filed." *Id.* § 23.10(2).

Much as before, a dismissal at this point would seemingly be a final agency action on which the complainant could seek judicial review. But in Klein's case, the Board found probable cause to believe a chapter 22 violation had occurred. Thus, it initiated a contested case proceeding pursuant to Iowa Code section 23.10(3)(*a*) ("If the board finds the complaint is within the board's jurisdiction and there is a probable cause to believe there has been a violation of

chapter 21 or 22, the board . . . shall commence a contested case proceeding under chapter 17A against the respondent.").

6. *Contested case proceeding.* The first step taken in a contested case is the appointment of a prosecutor: "The executive director of the board or an attorney selected by the executive director shall prosecute the respondent in the contested case proceeding." *Id.* If the Board has an attorney other than its executive director prosecute the case, as occurred here, that attorney has sometimes been referred to as a "special prosecutor."

Next, the Board's administrative rules allow for pleadings in contested cases, including a petition. *See* Iowa Admin. Code r. 497—4.10(2). A petition must include "[t]he persons or entities on whose behalf the petition is filed." *Id.* r. 497—4.10(2)(*b*)(1). The special prosecutor filed a petition in this case.

Notably, Iowa Code chapter 23 says nothing of a petition; it speaks only of the complaint filed by the complainant. Thus, section 23.10(3)(*a*) provides that "[a]t the termination of the contested case proceeding the board shall . . . render a final decision as to the merits of the complaint."

The Board's rules allow nonparties to move to intervene and become parties to a contested case proceeding. *See* Iowa Admin. Code r. 497—4.18. In order to intervene and become a party, the movant must show three things: "(a) intervention would not unduly prolong the proceedings or otherwise prejudice the rights of existing parties; (b) the movant is likely to be aggrieved or adversely affected by a final order in the proceeding; and (c) the interests of the

movant are not adequately represented by existing parties." *Id.* r. 497—4.18(3). Klein did not seek to intervene here.

7. *Rendering a decision.* After a case goes to hearing before a hearing officer, the hearing officer issues a proposed decision. *See id.* r. 497—4.25(2). That proposed decision is adopted by the Board unless a party takes an intra-agency appeal to the Board or the Board initiates review of the decision on its own motion. *Id.* r. 497—4.25(2), —4.26(2)–(3). If an appeal is made, the Board resolves the appeal and issues its final decision.

When the Board finds a violation of Iowa Code chapter 22, it can take remedial action. *See* Iowa Code § 23.10(3)(*a*)–(*b*). It can require the respondent to pay statutory damages as allowed by section 22.10 to the extent that damages would be payable if the complainant had gone to court instead. *See id.* § 23.10(3)(*b*)(1). Statutory damages are paid to the state or local government, not the complainant. *See id.* § 22.10(3)(*b*).

Once a final decision is made by the Board, judicial review may be sought. *Id.* § 23.10(3)(*d*) ("A final board order . . . is subject to judicial review pursuant to section 17A.19."). But only "[a] person or party who has exhausted all adequate administrative remedies . . . is entitled to judicial review."[6] *Id.* § 17A.19(1). Whether Klein fits this description is the nub of this case and the issue to which we turn first.

---

[6]The statute also requires the person or party to be "aggrieved or adversely affected by any final agency action." Iowa Code § 17A.19(1). It is not disputed that Klein was adversely affected here.

**B. Exhaustion of Administrative Remedies.** "All administrative remedies must be exhausted before an aggrieved party is entitled to judicial review of an administrative decision." *Riley v. Boxa*, 542 N.W.2d 519, 521 (Iowa 1996). The Board and respondents claim—and the district court found—that Iowa Code chapter 23 required Klein to intervene in the contested case in order to exhaust his administrative remedies. While intervention is not explicitly required by chapter 23, they argue that it is implicitly required because it is the only way for a complainant to become a party to the contested case.

Iowa Code section 17A.19(1) specifies that a "person or party" can obtain judicial review. Klein urges that a *person* is able to exhaust administrative remedies without having been a *party* to a contested case. As the district court acknowledged, normally the word "or" is disjunctive. *See Kearney v. Ahmann*, 264 N.W.2d 768, 769 (Iowa 1978) ("When the word 'or' is used it is presumed to be disjunctive unless a contrary legislative intent appears."). And generally, we presume the legislature doesn't waste words. *See* Iowa Code § 4.4(2) (setting forth a presumption that "[t]he entire statute is intended to be effective"). Accordingly, based on the text of section 17A.19(1) alone, there should be times when a "person" can exhaust administrative remedies and seek judicial review without having been a "party."

On the other hand, contested cases are proceedings in which "the legal rights, duties or privileges of a *party* are required by Constitution or statute to be determined by an agency." *Id.* § 17A.2(5) (emphasis added). It is difficult to conceive how a nonparty "person" could exhaust administrative remedies

through a contested case without being a "party" to it in some sense. Other types of agency proceedings are different because they may not involve parties. For example, we have made clear that nonparties can seek judicial review of an agency's adoption of a rule. *See, e.g., Lundy v. Iowa Dep't of Hum. Servs.*, 376 N.W.2d 893, 895–96 (Iowa 1985).

The Board and respondents argue that *Stohr* limits the availability of judicial review in contested cases to parties. *See* 279 N.W.2d at 291. In *Stohr*, a county petitioned the Public Employment Relations Board (PERB) for a declaratory ruling that a union should not have been certified as the bargaining representative for a group of county employees. *Id.* at 288–89. When PERB dismissed the petition, four landowners and taxpayers, in addition to the county, sought judicial review. *Id.* We determined that the landowners and taxpayers had not exhausted administrative remedies and could not pursue judicial review. *Id.* at 288, 291.

We observed in *Stohr* that "[o]ther courts have limited the right of judicial review to parties participating in the agency proceedings." *Id.* at 291. And we captioned that section of the opinion: "Can persons not parties in the agency proceeding petition for judicial review?" *Id.* Yet *Stohr* does not cover the present set of facts. In *Stohr*, the landowners and taxpayers had no connection to the administrative proceeding. *Id.* at 288. They tried to participate only at the judicial review stage. *Id.* Klein, on the other hand, was responsible for initiating the agency proceedings. And his complaint was the subject of the Board's final decision.

The Board and respondents also point to *Fisher v. Iowa Board of Optometry Examiners*, 476 N.W.2d 48, 51 (Iowa 1991), as support for their position that intervention was required for Klein to seek judicial review. In *Fisher*, the Iowa Optometry Board had initiated a disciplinary proceeding against a licensed optometrist. *Id.* at 49. The only party named in the caption of the administrative action was the optometrist. *Id.* at 50. The board served as fact finder, while an assistant attorney general prosecuted the case. *Id.* Initially, the charges against the optometrist were dismissed. *Id.* at 49. Thereafter, the assistant attorney general "filed an application for a rehearing on behalf of the State." *Id.* In response, the board amended its decision and imposed a penalty on the optometrist. *Id.* The optometrist then sought judicial review and the attorney general unsuccessfully tried to intervene in the district court on behalf of the State. *Id.*

The question before us in *Fisher* was whether the State had been a "party" to the administrative proceeding and thus was entitled to intervene in the judicial review action. *Id.* We said that the mere fact an assistant attorney general had prosecuted the case before the agency did not make the State a party. *Id.* at 50. It was "the common posture" for that to occur. *Id.* We explained that some "affirmative action" in the administrative proceeding was required for the State to become a party. *Id.* at 51. However, that had occurred when the State stepped in and sought rehearing following the Optometry Board's initial dismissal of the charges. *Id.*

The Board and respondents claim that Klein failed to take such affirmative action here. We disagree. In *Fisher*, the State was not an initial party to the administrative proceeding, so its affirmative action came late. *Id.* at 50. Here, by contrast, Klein started the process. He filed a complaint with the Board that detailed the alleged violation of chapter 22, provided specific facts in support of the allegation, and requested specific relief. *See* Iowa Admin. Code r. 497—2.1(23). All this was akin to filing an initial pleading in a court case.

Turning from the caselaw, we think there are several reasons, both textual and nontextual, to conclude that Klein—as the complainant—exhausted administrative remedies here.

First, the statute at times refers to the complainant as a "party." *See* Iowa Code §§ 23.8(1), .9, .10(1).

Second, the Board and the special prosecutor treated Klein as a party in some respects. The special prosecutor listed Klein in his petition under the heading "Parties, Jurisdiction, and Venue." And Klein received service on filings that occurred throughout the contested case, including orders entered by the ALJ and the Board.

Third, the very point of a contested case before the Board is to decide the merits of the complaint filed by the complainant: "At the termination of the contested case proceeding the board shall . . . render a final decision as to the merits of the complaint." *Id.* § 23.10(3)(*a*). Even if we were to accept the view that the contested case is a distinct and separate proceeding to which complainants must intervene to become a party, at the end of the day, the Board is still

rendering a final decision on the complaint. *Id.* It does not seem remarkable that the complainant should be allowed to seek judicial review without having intervened when their complaint is the focus of the proceeding. Since the Board is adjudicating their complaint, it would arguably elevate form over substance to require the complainant to intervene.

Fourth, there are practical reasons not to make intervention the *sine qua non* of judicial review. *See id.* § 4.4(3) (setting forth the presumption that "[a] just and reasonable result is intended"). The complainant would have to intervene routinely to preserve *any* possibility of judicial review in a contested case in which the Board declined to grant all the relief sought by the complainant. The Board cannot seek judicial review of its own order. Thus, regular interventions by complainants—even if the complainants were totally satisfied with the Board's prosecution of the case—would be necessary simply to preserve the prospect of judicial review.

Fifth, as chapter 23 makes clear, the Board is designed to provide a "process for resolving disputes" that should be "efficient, informal, and cost-effective." *Id.* § 23.1. An intervention requirement would tend to undermine these goals. It could reduce efficiency to inject more motions, briefs, and arguments into the administrative proceeding if they normally duplicate the advocacy of the prosecutor. And complainants would typically need to hire counsel at this administrative stage, substantially increasing costs.

Sixth, the existence of the election-of-remedies provision in Iowa Code section 23.5 also tends to support Klein's position. Under section 23.5, the

complainant can bring an action under section 22.10 "or in the alternative . . . file a timely complaint with the board." *Id.* § 23.5(1). One of two paths must be chosen. If, however, the complainant sacrifices their right to bring an independent court action under section 22.10 by filing an administrative complaint, it seems only fair that they should have the ability to obtain judicial review of the action taken on their administrative complaint. It would be harsh to deny the complainant access to the courthouse.

Seeking to counter these points, the Board compares its handling of open records complaints to the manner in which the Iowa Board of Medicine (IBM) handles complaints regarding licensed physicians. But if there is an analogous process in another administrative agency, it is not the IBM's. The IBM was not designed to provide an alternate means for patients to resolve bilateral disputes with doctors. *See id.* chs. 147, 148, 272C. If a patient sustains an injury due to malpractice, their remedy lies in a lawsuit. Filing a complaint with the IBM may spark a disciplinary action, but these disciplinary measures do not provide relief to the complainant. *See id.* § 148.7(8). Nor is the complainant referred to as a "party." *See id.* §§ 148.7, 272C.4. These attributes of the IBM's process depart from the dispute resolution process described in chapter 23.

While the analogy is not perfect, we think the Board's process more closely resembles that of the Iowa Civil Rights Commission (ICRC). ICRC complaints and hearings serve the purpose of vindicating the complainant's rights. The ICRC makes a probable cause determination on the complainant's allegations of a discriminatory or unfair practice. *Id.* § 216.15(3)(*a*). If probable cause exists the

ICRC attempts to "eliminate the discriminatory or unfair practice by conference, conciliation, and persuasion." *Id.* § 216.15(3)(*c*). If that fails, the ICRC takes the case to hearing. *Id.* § 216.15(6). At the hearing, the case in support of the complaint is made by one of the ICRC's attorneys or agents. *Id.* § 216.15(7) ("The case in support of such complaint shall be presented at the hearing by one of the commission's attorneys or agents."). This process parallels the process described in chapter 23.

The two chapters also contain similar language. *See* Iowa Code §§ 216.15 (using dispute resolution language, including terms such as "complainant," "respondent," and "party"), .17 (referring to "parties"). Chapter 216, like chapter 23, comes with a strong implication that the complainant and respondent are considered to be parties to a dispute. *See id.* §§ 216.17(1)(*b*) (stating that the final decision is mailed to the parties), .15(3)(*c*) (requiring a final decision to be mailed to the complainant and respondent). In yet another similarity, chapter 216 doesn't explicitly say that civil rights complainants can seek judicial review of the ICRC's final decision. *See id.* § 216.17. But there is no question that they can. *See, e.g.*, *Renda v. Iowa C.R. Comm'n*, 784 N.W.2d 8, 9 (Iowa 2010); *King v. Iowa C.R. Comm'n*, 334 N.W.2d 598, 601 (Iowa 1983).

We believe the Board's mechanism for enforcing a complainant's right to public records resembles the ICRC's mechanism for enforcing a complainant's right to be free from discrimination. It is reasonable that a Board complainant should have an analogous right to seek judicial review of the Board's final decision.

A look at the practices in other jurisdictions gives us assurance that our conclusion makes sense as a policy matter. Only a small minority of states have administrative bodies dedicated to open-records enforcement. But the states that do have them structure them as dispute resolution systems, not regulatory or law enforcement bodies. And all of them allow a complainant to seek judicial review when access to records is denied.[7]

Granted, none of those states use an agency-appointed prosecutor during the contested case stage as Iowa does. But as far as we can tell, Iowa's system seeks to accomplish the same goals as those in other states. Nothing in the text of chapter 23 or chapter 17A requires us to curb the availability of judicial review for open-records complainants in Iowa. We decline to do so.

---

[7]Connecticut has a Freedom of Information Commission that renders open records decisions. "Any party aggrieved" by the commission's decision can appeal. Conn. Gen. Stat. § 1-206(*d*) (2021). Prior to amendment, the law in Connecticut was that only the complainant and the public body could appeal; now the commission can as well. *See Loc. 1303 & Loc. 1378 v. FOIC*, 463 A.2d 613, 616 (Conn. 1983) (holding the commission could not appeal a lower court's judicial review decision that modified the commission's because "the freedom of information commission is arguably not a 'party' and certainly not 'aggrieved' ").

In Maryland, "a complainant or custodian may appeal to the circuit court a decision issued by the State Public Information Act Compliance Board." Md. Code Ann., General Provisions § 4-362(*a*)(2) (West 2021).

New Jersey only allows the requestor to seek judicial review of a Government Records Council decision. *In re N.J. Firemen's Ass'n Obligation to Provide Relief Applications Under the Open Public Records Act*, 166 A.3d 1125, 1136 (N.J. 2017) (stating that "only the requestor may seek judicial review of the agency's decision" under New Jersey's Open Public Records Act, N.J. Stat. Ann. § 47:1A–1 to –13 (West 2017)).

Pennsylvania has an Office of Open Records. Both the "requester" and the agency may seek judicial review of that body's decisions. 65 Pa. Cons. Stat. § 67.1301(*a*) (2021).

In South Dakota, open records disputes are heard by the Office of Hearing Examiners. The state's statute says, "The aggrieved party may appeal the decision of the Office of Hearing Examiners to the circuit court." S.D. Codified Laws § 1-27-41 (2021). Elsewhere in the statute, it is clear that the "requestor" and the public entity denying the records request are the parties to the dispute. *See id.* § 1-27-39.

For the foregoing reasons, we hold that Board complainants exhaust administrative remedies by filing their complaint with the Board and receiving an adverse final decision on that complaint. Klein is a person or party who has exhausted his administrative remedies.[8] Klein can petition for review of the Board's contested case decision despite not having intervened in the proceedings below.

We close this discussion with three notes of caution. First, the present decision applies only to the Board and chapter 23. We are not deciding, as to other contested-case agency proceedings, whether a complainant must participate in the contested case in order to exhaust administrative remedies and have the right of judicial review.

Second, doctrines of claim and issue preclusion may come into play. A complainant who has the ability to obtain judicial review of a Board decision and fails to do so may become bound by that decision for claim and issue preclusion purposes.

Third, as we discuss in the next section of this opinion, a complainant who fails to participate in the contested case before the Board may seek review of the Board's decision in that case, but the complainant may not raise issues that were not considered by the Board. Any other rule would favor nonparticipants in the administrative proceeding over participants.

---

[8]We need not decide whether Klein is technically a "person" or "party" under Iowa Code section 17A.19(1). Our conclusion is simply that he exhausted administrative remedies within the meaning of the statute.

**C. Standing.** Having concluded that Klein has exhausted administrative remedies and is entitled to seek judicial review of the Board's final decision under Iowa Code section 17A.19, we need to determine what matters he can raise. The district court held that Klein did not have standing to seek judicial review of the withholding of any of the items he sought other than the dashcam footage. Klein argues that he is entitled to judicial review with respect to all the records he requested in his original complaint. While this issue has been framed primarily as a question of standing by the parties and the district court, it can also be viewed through the lens of other doctrines such as mootness, issue preservation, and exhaustion of administrative remedies.[9]

1. *No standing to pursue records that are already publicly available.* "[T]o have standing to challenge an administrative action in court under the [Iowa Administrative Procedure Act], 'the complaining party must (1) have a specific, personal, and legal interest in the litigation; and (2) the specific interest must be adversely affected by the agency action in question.' " *Dickey*, 943 N.W.2d at 37–38 (quoting *Medco Behav. Care Corp. of Iowa v. Iowa Dep't of Hum. Servs.*,

---

[9]Standing and mootness are related, but they are not synonymous. *See Puntenney v. Iowa Utils. Bd.*, 928 N.W.2d 829, 837–38 (Iowa 2019) (analyzing the issues of standing and mootness separately). "One commentator has defined mootness as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).' " *Baker v. City of Iowa City*, 750 N.W.2d 93, 97 (Iowa 2008) (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980) (quoting Henry P. Monaghan, *Constitutional Adjudication: The Who and When*, 82 Yale L.J. 1363, 1384 (1973))).

Some of the requested records were unsealed in the federal litigation and became publicly available on or after August 14, 2018. *See Steele*, 334 F. Supp. 3d at 976. This judicial review proceeding was not commenced until March 22, 2019. Thus, the question is probably technically one of standing rather than mootness because we are dealing with records that were already public when the judicial review proceeding was filed.

553 N.W.2d 556, 562 (Iowa 1996)). In *Dickey v. Iowa Ethics & Campaign Disclosure Board*, we held that the petitioner lacked standing to obtain judicial review of an administrative decision in a campaign finance reporting matter where the petitioner already had the relevant information. *Id.* at 38–39.

Based upon this principle of justiciability, the district court refused to consider whether the respondents were required to release records that had been unsealed by the federal court and were available to the public—specifically, the bodycam footage and the 911 call or calls. It reasoned, "The Court cannot provide any remedy to Klein with regard to these records now, as they have already been released to Klein and the general public."

The district court was correct to find that Klein lacked standing to seek judicial review with respect to records that were already publicly available. Klein makes no meaningful attempt to argue otherwise.

2. *No standing to pursue records as to which there was no intra-agency appeal and the correctness of the ALJ's ruling on those records was conceded.* The other facet of this issue requires us to determine which matters were actually decided by the Board and therefore can be considered on judicial review. "In reviewing agency action, the district court and the appellate court may only review issues considered and decided by the agency." *Grudle v. Iowa Dep't of Rev. & Fin.*, 450 N.W.2d 845, 847 (Iowa 1990); *see also Irving v. Emp. Appeal Bd.*, 883 N.W.2d 179, 186 (Iowa 2016) ("We have repeatedly said in the context of unemployment appeals that we consider only issues raised in the record before the EAB."); *KFC Corp. v. Iowa Dep't of Rev.*, 792 N.W.2d 308, 329

(Iowa 2010) ("[W]e decline to entertain issues not ruled upon by an agency when the aggrieved party failed to follow available procedures to alert the agency of the issue."); *St. Luke's Hosp. v. Gray*, 604 N.W.2d 646, 650 (Iowa 2000) ("Our review of contested case decisions is limited to those questions considered by the agency."); *Meads v. Iowa Dep't of Soc. Servs.*, 366 N.W.2d 555, 559 (Iowa 1985) ("The district court may only review issues considered and decided by the agency.").

The district court took the view that the Board only considered the confidentiality of three categories of records: the bodycam footage, the dashcam footage, and the 911 calls. In the words of the district court, "Although the [Board] included the phrase 'such as,' it appears to the Court the only records actually addressed were the bodycam footage, the dashcam footage, and the 911 calls." Consequently, the court limited its review to those three items. The Board and respondents agree with the district court and argue that, if Klein can obtain judicial review at all, it is limited to those three items.

Klein sees the matter differently. He contends that everything he requested in his complaint to the Board is fair game for judicial review. He notes that the Board's finding of probable cause used the phrase "including, but not limited to" with respect to the three specific records in controversy. In addition, the special prosecutor's petition alleged, "*Among* the public records that were requested but which Respondents have wrongfully refused to produce . . . ." (emphasis added). Klein argues that this catchall language demonstrates that the special prosecutor was pursuing more than just the video footage and the emergency

dispatch calls. As Klein notes, while the Board's ultimate conclusion refers only to the three sets of records, elsewhere the Board stated, "The crux of this case is whether DCI and [BPD] violated chapter 22 by refusing to release the recording and transcript of 911 calls, bodycam videos taken by officers, videos taken by dash cameras, and records showing the 'date, time, specific location and immediate circumstances surrounding the incident.' "

On our review of the administrative record, we agree with the district court's analysis of what was actually considered and decided by the Board. In her proposed decision, the ALJ made two distinct determinations. First, she found that the Des Moines County Attorney's letter fulfilled the BPD's and the DCI's obligation to provide "the date, time, specific location, and immediate facts and circumstances surrounding [the] incident." Iowa Code § 22.7(5). Second, she found that the 911 calls, the bodycam footage, and the dashcam footage should be produced. She reasoned that these items were not shielded from public scrutiny by having been made part of an investigative report. The ALJ thus concluded, simply, "The Respondents should produce the 911 tape, the dashcam videos, and the bodycam videos."

The BPD and the DCI appealed. The special prosecutor, however, did not appeal. Instead, in his responsive briefing, he stated that the ALJ's ruling was "correct and should be adopted by the Board." His briefing also indicated that the dispute was limited to the videos and the 911 calls. At oral argument before the Board, the special prosecutor conceded that he was only seeking to uphold the ALJ's proposed decision, not to expand it.

Klein claims that the rulings of the Board and the ALJ were broad enough to include other documents related to the January 6, 2015 incident. But before the Board, the special prosecutor limited his argument to three discrete items. We think only the items contested by the special prosecutor before the Board are before this court.

As we explained previously, Klein did not *need* to intervene to seek judicial review. But having not intervened, he is limited to the issues that were considered and decided below. If Klein had intervened, he could have pursued an intra-agency appeal challenging the ALJ's determination that the county attorney letter satisfied the respondents' obligation to provide "the date, time, specific location, and immediate facts and circumstances surrounding [the] incident" under Iowa Code section 22.7(5). But no such appeal was brought; instead, the special prosecutor conceded the correctness of the ALJ's ruling. There was, therefore, only one fighting issue before the Board: whether the 911 calls, the bodycam video, and the dashcam video should be produced. Hence, they are the only records whose nonproduction is before the district court on judicial review—not the universe of records sought by Klein's original complaint or even by the special prosecutor's petition.

It is true that the Board's final decision incorporated the ALJ's ruling as to the first determination identified above. Thus, using language that tracked what the ALJ had said, the Board found the county attorney's letter satisfied the requirements of Iowa Code section 22.7(5) to disclose "the date, time, specific location, and immediate facts and circumstances surrounding [the] incident."

But the first determination was no longer a live issue when the contested case got to the Board. The special prosecutor had accepted this part of the ALJ's ruling and did not appeal. No one alerted the Board that they disagreed with this portion of the ALJ's ruling, so the Board simply incorporated this portion of the ALJ's ruling. And because he did not intervene, Klein cannot stand in a better position than the parties who actually litigated before the agency. *See Cont'l Tel. Co. v. Colton*, 348 N.W.2d 623, 626 (Iowa 1984) ("[O]rdinarily administrative agencies should be permitted to correct their own errors before resort is had to the courts."); *see also N. River Ins. v. Iowa Div. of Ins.*, 501 N.W.2d 542, 546 (Iowa 1993) ("An insurance company is not entitled to judicial review of a proposed decision which has not been appealed to the insurance commissioner.").

3. *Conclusion.* The district court correctly determined that the Board considered only the 911 calls, the bodycam footage, and the dashcam footage. We also agree that Klein lacked standing to pursue records now in the public domain. Although the district court indicated that all the 911 calls and the bodycam footage were now publicly available, a question was raised at oral argument whether all 911 calls relating to the shooting have been produced. On remand, the district court should address the production of any dashcam video and 911 calls related to the shooting.

**D. Declaratory Relief.** Finally, we consider Klein's separate request for declaratory relief. In Klein's petition for judicial review, he sought the following relief in addition to reversal of the Board's administrative decision:

[1] A declaratory ruling that 911 calls, bodycam video, and dashcam video are not "peace officers' investigative reports," but rather comprise the "immediate facts and circumstances surrounding a crime or incident" and thus "shall not be kept confidential . . . except in those circumstances where disclosure would plainly and seriously jeopardize an investigation or pose a clear and present danger to the safety of any individual" per Iowa Code section 22.7(5) or would otherwise be confidential under section 22.7;

. . . .

[2] A declaratory ruling that even when deemed potentially confidential, peace officers' investigative reports under Iowa Code section 22.7(5) are subject to the *Hawk Eye* and *Shanahan* 3-part balancing test to weigh the public interest in disclosure against the government interest in nondisclosure.

(Footnote omitted.)

The district court dismissed those two requests because it viewed them as improper attempts to invoke its original jurisdiction. The court cited *Black v. University of Iowa* for the proposition that a judicial review proceeding cannot be joined with an original action. *See* 362 N.W.2d at 462 ("Fundamentally, in judicial review proceedings the district court exercises only appellate jurisdiction and has 'no original authority to declare the rights of parties or the applicability of any statute or rule.'" (quoting *Stohr*, 279 N.W.2d at 290)). We think the district court's analysis was correct.

*Sierra Club Iowa Chapter v. Iowa Department of Transportation*, 832 N.W.2d 636, is on point. There, we refused to allow a declaratory judgment action to be brought against a state agency. *Id.* at 648. We explained that "the legislature created the administrative procedure for agency-issued declaratory orders, as codified in section 17A.9, to replace the court-provided remedy of

declaratory judgments under Iowa Rule of Civil Procedure 1.1102 for matters within an agency's jurisdiction." *Id.* at 646. We held that the Sierra Club had to exhaust administrative remedies by seeking a declaratory order from the Iowa Department of Transportation before it could bring a declaratory judgment action in district court. *Id.* at 648.

Here, the Board likewise has statutory authority to issue declaratory orders. *See* Iowa Code § 23.6(3). But Klein did not seek such an order. We conclude, therefore, that his request for a declaratory judgment was properly dismissed under the authority of *Sierra Club*. However, this does not preclude the district court from making a legal determination on any issue that is properly before it, even if the issue was *also* part of Klein's requested declaratory relief. In short, the district court always has the authority to decide what the law requires in a particular case.

**V. Conclusion.**

For the reasons stated, we conclude that Klein has standing to seek judicial review of the Board's February 21, 2019 final decision. Review is limited to the matters that were raised before the Board and decided by it. Those matters are the 911 calls, the bodycam footage, and the dashcam footage. However, Klein lacks standing to pursue any of those items that have already been made public. Klein is also not eligible for declaratory relief. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.**

All justices concur except McDermott, J., who takes no part.